IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 18, 2000 Session

**STATE OF TENNESSEE v. ANDRE L. MAYFIELD**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 93-A-687      Seth Norman, Judge**

———————————

**No. M1999-02415-CCA-R3-CD - Filed June 11, 2001**

———————————

In 1999, the Defendant was tried by a Davidson County jury and found guilty of aggravated robbery, aggravated rape, rape, and two counts of aggravated kidnapping for crimes perpetrated on two victims. Following a sentencing hearing, the trial court sentenced the Defendant to an effective sentence of fifty years. In this appeal as of right, the Defendant argues that (1) the trial court erred by failing to sever the offenses against one victim from those against the second victim; (2) the trial court erred by failing to admonish the jury not to view, listen to, or read any news coverage of the case during trial; (3) the trial court erred by failing to grant his two motions for a mistrial; (4) the evidence presented at trial was insufficient to support his convictions; (5) the trial court erred by allowing the State to introduce evidence of the age of one victim; (6) the trial court erred by allowing into evidence altered documents and by instructing the jury that the documents were altered to remove inadmissible evidence; (7) the trial court erred by allowing into evidence inadmissible hearsay statements; (8) the trial court erred by refusing to instruct the jury on lesser-included offenses requested by the defense; and (9) the trial court sentenced him improperly. Having thoroughly reviewed the record in this case, we affirm the judgment of the trial court, as modified to indicate that the Defendant was sentenced as a Range II Multiple Rapist for the rape conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed as Modified**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

David H. Hornik, Nashville, Tennessee, for the appellant, Andre L. Mayfield.

Paul G. Summers, Attorney General and Reporter; Todd R. Kelley, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Lisa A. Naylor, Assistant District Attorney General; and Charles A. Carpenter, Assistant District Attorney General; for the appellee, State of Tennessee.

**OPINION**

In April 1993, the Davidson County Grand Jury indicted the Defendant for two counts of aggravated kidnapping, two counts of aggravated rape, and one count of aggravated robbery. In June 1999, the Defendant was tried by a Davidson County jury and found guilty of aggravated robbery, aggravated rape, rape, and two counts of aggravated kidnapping. The trial court sentenced him to fifteen years for each count of aggravated kidnapping, fifteen years for aggravated robbery, twenty years for aggravated rape, and fifteen years for rape. The court ordered that the sentence for one count of aggravated kidnapping and the sentence for aggravated robbery run concurrently, but consecutive to all other sentences. The court further ordered that the sentence for the second count of aggravated kidnapping and the sentence for rape run concurrently, but consecutive to all other counts. The Defendant therefore received an effective sentence of fifty years.

The Defendant now appeals his convictions and his sentence, presenting the following issues for our review: (1) whether the trial court committed plain error by failing to sever the trial for offenses against victim Clara Bumphus from that of offenses against victim Rosheka Alexander; (2) whether the trial court erred by failing to admonish the jury not to view, listen to, or read any news coverage of the case during trial; (3) whether the trial court erred by failing to grant his two motions for a mistrial; (4) whether the evidence presented at trial was sufficient to support the Defendant's convictions; (5) whether the trial court erred by allowing the State to present evidence of the age of one victim; (6) whether the trial court erred by allowing into evidence altered documents and by instructing the jury that the documents were altered to remove inadmissible evidence; (7) whether the trial court erred by allowing into evidence inadmissible hearsay statements; (8) whether the trial court erred by refusing to instruct the jury on lesser-included offenses requested by the defense; and (9) whether the trial court improperly sentenced the Defendant. We affirm the judgment of the trial court.

At trial, Clara Bumphus, one of the two victims in this case, testified that at midday on October 24, 1992, she walked to a mechanic's shop near her home to pick up her car, which was being repaired. When she arrived at the shop, she discovered that her car was not ready, so she walked to a nearby gas station, where she purchased food and a soft drink. She then began walking home through an alley. Bumphus testified that while she was walking home, a man, whom she later identified as the Defendant, stepped into the alley from behind a fence, approached her from behind, and placed a pistol to her side. When she felt the gun, Bumphus told him, "Please don't hurt me. . . . Please don't kill me because I have children."

According to Bumphus, the Defendant forced her up the alley, still holding the gun to her waist, and into an abandoned house. There, he told her, "Shut up. Don't look at me. I'll hurt you. . . . I'll kill you." He then ordered her to lie down on the floor, removed her underclothes, and penetrated her vaginally with his penis. During the rape, the Defendant held the gun in his hand and pointed it towards Bumphus' face. Afterwards, the Defendant and Bumphus got up, and the Defendant emptied Bumphus' purse onto the floor. He took $51 and left the remaining contents of the purse. Bumphus testified that the Defendant then placed the gun in his pocket and escorted

Bumphus to a nearby bus stop, where he released her and boarded the bus. She reported that the entire incident spanned approximately thirty-five to forty minutes.

Bumphus testified that immediately after the Defendant departed, she walked to her sister's apartment, where she "cleaned up." While at her sister's apartment, she noticed a patrol car outside, "ran out in the middle of the street," and "waved the officer down." She reported what had happened to the officer. Bumphus stated that the officer took her to the house where the rape occurred, and they found some of her belongings there, which had fallen out of her purse when the Defendant took her money. Other officers soon arrived, and Bumphus was transported to the hospital for an examination.

Bumphus testified that her attacker did not disguise his appearance on the day of the rape. She stated that although he continually admonished her not to look at him, she remembered his face clearly. She recalled that she gave a detailed description of the Defendant's appearance to the police and aided the police in constructing a composite drawing of her attacker. The drawing was introduced as an exhibit at trial. Bumphus also testified that she attended a police line-up at which she identified the Defendant as her attacker.

Officer Charles R. Williams of the Metropolitan Police Department testified that Clara Bumphus approached him on foot on October 24, 1992 while he was "doing a routine patrol" at the housing project where she lived. When he stopped his vehicle, she told him that she had been robbed and raped by a "male black," and she related details of the incident to him. Williams recalled that Bumphus appeared to be in a state of shock when she stopped him. Williams testified that he took Bumphus to the abandoned home where she claimed the rape had occurred, and at the house, they found items on the floor that had fallen out of Bumphus' purse.

Sergeant Kim Gooch of the Metropolitan Nashville Police Department testified that she assisted Clara Bumphus in creating a composite drawing of her attacker. Gooch also testified that she participated in a physical line-up with Bumphus on November 10, 1992. She reported that the victims participating in the line-up were not allowed to converse with one another during the process. Detective Suzanne Stephens of the Metropolitan Nashville Police Department testified that she also participated in the line-up conducted on November 10, 1992. She stated that at the line-up, Bumphus identified the Defendant as her attacker.

Officer Jeff Burnette of the Metropolitan Nashville Police Department testified that in 1992, he had an opportunity to view the composite drawing of Bumphus' attacker. Burnette stated that when he saw the drawing, he called the police department's sex abuse division and told Detective Stephens, an employee of that division, that he knew an individual who resembled the composite drawing. Burnette identified the individual as the Defendant.

The second incident in this case involved victim Rosheka Alexander, who also testified at trial. Alexander recalled that on October 28, 1992, when she was seventeen years old, she was walking home from a friend's house when a man on a bike, whom she later identified as the

Defendant, approached her.  She stated that initially, she thought the Defendant seemed friendly, so she told him her name, and he identified himself as "Dray."  However, Alexander testified that the Defendant soon "pulled out a gun" and threatened to "blow [her] brains out" if she did not follow him.  She continued to walk with him while he asked her a number of questions, such as how old she was, where she lived, and what her phone number was.  Fearful, Alexander answered the questions and followed the Defendant up an alley to an empty house.  As she and Defendant approached the house, however, Alexander turned to run.  The Defendant grabbed her from behind, put the gun against her back, and told her that "if [she] tried to run again, he was going to blow her brains out."

According to Alexander, the Defendant dragged her into the house, "threw [her] on the carpet," forced her to remove her skirt, and raped her vaginally with his penis.  Alexander testified that after the rape, while she cried, the Defendant asked her, "Did I break your virginity?" to which she responded, "Yes, you did."  Alexander stated that this appeared to please the Defendant, and he "got back on [her]."  In an effort to escape, she told him that she saw someone at the window of the house, which caused him to stand up.  However, when pressed by the Defendant, she admitted that she had not seen anyone at the window.  She stated that this angered the Defendant, and he "started choking [her] . . . [and] slapping [her] head on the floor . . . ."  Alexander testified that the Defendant then climbed out of the window, attempted to help her out of the window, and got onto his bike.  Before leaving the scene, the Defendant handed Alexander a piece of paper on which he had apparently written his name and phone number.  The Defendant then departed on his bicycle, and Alexander ran home, where she immediately took a shower.

Alexander testified that she told no one about the rape until a teacher at school the following day questioned her about her demeanor.  Alexander stated that she "didn't really want to talk about it at first," but eventually told her teacher what had happened.  A police officer was summoned to her school, and Alexander showed the officer where the rape had occurred.  She was later taken to the hospital for testing.

Alexander recalled that the house where she was raped had been freshly painted and carpeted shortly before the rape occurred.  She also recalled that the Defendant did not attempt to disguise his appearance at the time of the rape, and she stated that she had a chance to look at his face.  She remembered that "[h]e had gold on his teeth."  Alexander aided police officers in assembling a composite drawing of her attacker, and the drawing was introduced as an exhibit at trial.  In addition, Alexander participated in both a photographic line-up and a physical line-up prior to trial.  On both occasions and at trial, she identified the Defendant as her attacker.

Lieutenant Thomas Jones of the Metropolitan Nashville Police Department testified that in 1992, he was employed as a crime scene technician.  He recalled that on October 29, 1992, he was called to investigate the house in which Rosheka Alexander claimed to have been raped.  He stated that he was able to lift fingerprints from the freshly-painted windowsill of the room where Alexander reported the rape had occurred.  Officer Danny Morris, a fingerprint expert with the Metropolitan Nashville Police Department, testified that he examined the fingerprints lifted from the scene.  He

compared a fingerprint lifted from the windowsill with the Defendant's fingerprint and concluded that the two prints matched.

Detective Suzanne Stephens returned to the stand and stated that she administered the photographic line-up to Rosheka Alexander and aided in conducting the physical line-up at which both Clara Bumphus and Rosheka Alexander identified the Defendant as the man who raped them. Stephens verified that Alexander identified the Defendant as her attacker at both the physical line-up and at the photographic line-up. She also testified that the two victims were not allowed to speak to one another during the physical line-up.

## I. SEVERANCE

The Defendant argues that the trial court erred by failing to grant his motion to sever the offenses against Rosheka Alexander from the offenses against Clara Bumphus. Although the Defendant failed to raise this issue in his motion for new trial, he contends that the trial court's failure to sever the offenses was plain error. Normally, issues "upon which a new trial is sought" that are not included in a defendant's motion for new trial are considered waived. Tenn. R. App. P. 3(e); see State v. Clinton, 754 S.W.2d 100, 103 (Tenn. Crim. App. 1988). Nevertheless, an appellate court may review an issue which would ordinarily be considered waived if the court finds plain error in the record. See Tenn. R. Crim. P. 52(b). Rule 52 of the Tennessee Rules of Criminal Procedure states, "An error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice." Id.; see also State v. Adkisson, 899 S.W.2d 626, 636-42 (Tenn. Crim. App. 1994). In an exercise of our discretion, we will address the merits of this issue.

Rule 14 of the Tennessee Rules of Criminal Procedure provides as follows: "If two or more offenses have been joined or consolidated for trial . . . , the defendant shall have the right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible upon the trial of the others." Tenn. R. Crim. P. 14(b)(1). A trial court's denial of a motion for severance under this rule will be reversed only when there has been an abuse of discretion. State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999). In Tennessee, there are three categories of common scheme or plan evidence: (1) evidence showing a distinctive design or signature crime; (2) evidence demonstrating a larger, continuing plan or conspiracy; and (3) evidence that is part of the same transaction. State v. Moore, 6 S.W.3d 235, 240 (Tenn. 1999). "Before multiple offenses may be said to reveal a distinctive design, . . . the 'modus operandi employed must be so unique and distinctive as to be like a signature.'" Id. (citing State v. Carter, 714 S.W.2d 241, 245 (Tenn.1986)).

> However, the Tennessee Supreme Court has noted that
> the mere existence of a common scheme or plan is not a proper justification for
> admitting evidence of other crimes. Rather, admission of evidence of other crimes
> which tends to show a common scheme or plan is proper to show identity, guilty

knowledge, intent, motive, to rebut a defense of mistake or accident, or to establish some other relevant issue. Unless expressly tied to a relevant issue, evidence of a common scheme or plan can only serve to encourage the jury to conclude that since the defendant committed the other crime, he also committed the crime charged.

Id. at 239 n.5. The court has also stated that "a common scheme or plan for severance purposes is the same as a common scheme or plan for evidentiary purposes." Id. at 240 n.7. Thus, Tennessee Rule of Evidence 404(b) is also relevant to our analysis of this issue. See State v. McCary, 922 S.W.2d 511, 513-14 (Tenn. 1996).

In this case, the trial court concluded that offenses against Clara Bumphus and those against Rosheka Alexander were signature crimes and therefore denied the Defendant's motion to sever. In doing so, the trial court noted that the crimes against the two women involved "penile-vaginal rape," that a common weapon was used, and that both occurred "in East Nashville in close proximity, . . . during the day." The court also noted that "both victims were walking alone . . . [and that] both [victims] were threatened with a gun or threatened to be killed." In addition, we note that the victims, who were both young females, were taken through alleys to abandoned houses, where they were raped. We agree with the trial court's finding that the two crimes in this case are similar enough to constitute signature crimes. We further conclude that because the identity of the perpetrator is a material issue in this case, evidence of each of the crimes in this case "would be admissible upon the trial of the others," Tenn. R. Crim. P. 14(b)(1), to establish identity. See McCary, 922 S.W.2d at 514 (Tenn. 1996); Moore, 6 S.W.3d at 239 (stating that offenses that are part of a common scheme or plan are typically offered to establish the identity of the perpetrator). We therefore conclude that the trial court did not abuse its discretion in denying the Defendant's motion to sever the two offenses for trial purposes.

## II. JURY ADMONITION REGARDING MEDIA COVERAGE

The Defendant next argues that the trial court erred by failing to instruct the jury not to view, read, or listen to any news coverage of the case. Although the defense requested an admonition regarding media coverage, the trial court did not issue any such precautionary instructions.

Rule 24 of the Tennessee Rules of Criminal Procedure provides as follows:
The [trial] court shall . . . give the jurors, once they are sworn, appropriate admonitions regarding their conduct during the case. In each case these shall include [an] admonition[] . . .
. . . .
. . . [n]ot to read, listen to, or view any news reports concerning the case. The court shall explain that the case must be decided solely and alone upon the evidence introduced at trial.

Tenn. R. Crim. P. 24 (f)(3) (emphasis added).

Because Rule 24 mandates that the trial court admonish the jury concerning media coverage, we conclude that the trial court in this case erred by not instructing the jury not to read, listen to, or view any news reports concerning the case. However, after considering the entire record, we are satisfied that this error was harmless. See Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a). No evidence of news coverage is included in the record. Nor is there evidence that any juror serving on the jury in this case was exposed to media coverage of the case. The Defendant has failed to show that any of the jurors who actually sat on the case were prejudiced by any publicity or by the trial court's failure to admonish them. We thus conclude that the trial court's failure to admonish the jury concerning media coverage was harmless.

### III. MOTIONS FOR MISTRIAL

The Defendant argues that the trial court erred by failing to grant his motions for a mistrial. The Defendant first contends in his brief that the trial court should have granted a mistrial based on testimony by Officer Jeff Burnette "that he recognized the Defendant because the composite he saw looked like the person he had in custody (defendant), indicating that he had arrested Defendant for other charges." He also contends that the trial court should have granted a mistrial based on testimony by Detective Suzanne Stephens "that there were other persons involved in the line up conducted in this matter in that the testimony suggested that there were other victims involved."

"The granting or denial of a mistrial is within the sound discretion of the trial court." State v. McKinney, 929 S.W.2d 404, 405 (Tenn. Crim. App.1996). This Court will not disturb such a decision absent a finding of an abuse of discretion. State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App.1996).

We first address the Defendant's contention that the trial court should have granted a mistrial based on Officer Jeff Burnette's testimony.[1] At trial, Burnette testified that he recognized the subject of one of the two composite drawings. He stated that after viewing the drawing, he contacted the sex abuse division of the Metropolitan Nashville Police Department and "had a gentleman placed in custody." Burnette identified the man as the Defendant. Following Burnette's testimony, the defense moved for a mistrial, and the trial court denied the motion. Having reviewed the record, we conclude that the trial court did not err by failing to grant a mistrial based on Officer Burnette's testimony. Burnette did not state at any time during his testimony that the Defendant was "in custody," as the Defendant contends. Rather, he simply testified that upon viewing the composite drawing of the suspect in this case, he contacted the proper division of the police department and "had [the Defendant] placed in custody." (Emphasis added.) This issue has no merit.

---

[1] The State argues that counsel for the defense failed to make a contemporaneous objection to Officer Burnette's testimony and that the issue is therefore waived. Failure to make a contemporaneous objection waives consideration by this Court of the issue on appeal. See Tenn. R. App. P. 36(a); State v. Killebrew, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988). While we agree that counsel for the defense failed to make a contemporaneous objection to Officer Burnette's testimony, counsel did move for a mistrial immediately after Burnette's testimony. Because the Defendant appeals this issue based upon the trial court's failure to grant a mistrial, we will consider the issue on the merits.

We next address the Defendant's argument that the trial court erred by failing to grant a mistrial based on the testimony of Officer Suzanne Stephens.[2] At trial, Stephens testified as follows regarding the circumstances of the line-up:

> GENERAL NAYLOR (PROSECUTOR): Now, you had indicated that Clara Bumphus was in the room. And who else was in the room observing the lineup?
>
> OFFICER STEPHENS: Rosheka Alexander. There were also several other people present.
>
> GENERAL NAYLOR: Okay. We're not going to go into that, Detective. More specifically, do you recall who Clara Bumphus identified?
>
> OFFICER STEPHENS: Yes.
>
> GENERAL NAYLOR: Who did she identify?
>
> OFFICER STEPHENS: She identified number two.
>
> GENERAL NAYLOR: Did Ms. Bumphus have an opportunity to speak with any other persons during the lineup?
>
> OFFICER STEPHENS: No.
>
> GENERAL NAYLOR: And according to your instructions, you specifically told her not to. Is that correct?
>
> OFFICER STEPHENS: Absolutely.

At the conclusion of Stephens' testimony, the defense moved for a mistrial, and the trial court denied the motion.

The Defendant argues that Detective Stephens' testimony revealed to the jury that other victims were involved in the line-up. We must disagree. The "other people" at the line-up to whom Officer Stephens referred could have been law enforcement personnel, attorneys, or any number of other individuals. We conclude that Officer Stephens' testimony was not inappropriate. We therefore conclude that the trial court did not abuse its discretion by denying the Defendant's motion for a mistrial based on Officer Stephens' testimony.

## IV. SUFFICIENCY OF THE EVIDENCE

The Defendant contends that the evidence presented at trial was insufficient to support his convictions. Specifically, the Defendant argues that "[t]he jury's verdict was clearly contrary to the weight of the evidence produced at trial." In addition, the Defendant argues that the trial court erred by failing to grant his motion for judgment of acquittal. See Tenn. R. Crim. P. 29. This Court has noted that "[i]n dealing with a motion for a judgment of acquittal, unlike a motion for a new trial, the trial judge is concerned only with the legal sufficiency of the evidence and not with the weight of the evidence." State v. Hall, 656 S.W.2d 60, 61 (Tenn. Crim. App. 1983). The standard for

---

[2] Again, counsel for the defense did not make a contemporaneous objection to Officer Stephen's testimony at trial. See Tenn. R. App. P. 36(a); State v. Killebrew, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988). However, because the defense moved for a mistrial following Stephen's testimony and because the Defendant predicates his appeal of the issue upon the trial court's failure to grant a mistrial, we will consider this issue on the merits.

reviewing the denial or grant of a motion for judgment of acquittal is analogous to the standard employed when reviewing the sufficiency of the convicting evidence after a conviction has been imposed. See State v. Adams, 916 S.W.2d 471, 473 (Tenn. Crim. App. 1995). We have therefore consolidated the two issues into one and will resolve both by determining whether the evidence presented at trial was sufficient to support the jury's verdict.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), overruled on other grounds, State v. Hooper, 29 S.W.3d 1 (Tenn. 2000).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956); State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

## A. VICTIM CLARA BUMPHUS

The Defendant was convicted of the aggravated kidnapping, aggravated rape, and aggravated robbery of Clara Bumphus. Aggravated kidnapping is defined, in pertinent part, as follows:
> Aggravated kidnapping is false imprisonment, as defined in § 39-13-320, committed:
> . . . [t]o facilitate the commission of any felony or flight thereafter. . . .

Tenn. Code Ann. § 39-13-304(a)(1). False imprisonment is defined as follows: "A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Id. § 39-13-302(a).

Aggravated rape is defined, in pertinent part, as follows:
> Aggravated rape is unlawful sexual penetration of a victim by the defendant . . .
> accompanied by any of the following circumstances:

. . . [f]orce or coercion is used to accomplish the act and the defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it is a weapon . . . .

Id. § 39-13-502(a)(1). Finally, aggravated robbery is defined, in pertinent part, as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear," id. § 39-13-401(a), "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon . . . ." Id. § 39-13-402(a)(1).

At trial, Clara Bumphus testified that the Defendant approached her with a gun, forced her to walk with him to an abandoned house, where he raped and robbed her before escorting her to a nearby bus stop. Bumphus reported that the Defendant was armed with the gun during the entire episode and threatened to kill her several times if she did not cooperate. Viewing this evidence in light most favorable to the State, this is sufficient evidence from which the jury could have concluded that the Defendant committed aggravated kidnapping in order to facilitate the subsequent rape and robbery. Bumphus also testified that the Defendant forcefully penetrated her vaginally with his penis while he held a gun pointed at her face. This is clearly sufficient evidence to support the jury's verdict that the Defendant committed aggravated rape. Finally, Bumphus testified that after the rape, the Defendant, who was still holding the gun, emptied the contents of her purse and took $51. This is sufficient evidence from which the jury could have found the Defendant guilty of aggravated robbery. We also note that the State presented evidence that Bumphus aided police in rendering a composite drawing of her attacker, which was entered into evidence at trial, and that Bumphus identified the Defendant at a physical line-up as the man who kidnapped, raped and robbed her. We conclude that sufficient evidence was presented to support the jury's verdict of guilt as to the crimes perpetrated upon victim Clara Bumphus.

## B.  VICTIM ROSHEKA ALEXANDER

The Defendant was convicted of the aggravated kidnapping and rape of Rosheka Alexander. Rape is defined, in pertinent part, as

unlawful sexual penetration of a victim by the defendant . . . accompanied by any of the following circumstances:
        . . . Force or coercion is used to accomplish the act . . . .

Id. § 39-13-503(a)(1).

At trial, Rosheka Alexander testified that she was approached by the Defendant, who pulled out a gun and threatened to kill her if she did not follow him. Alexander reported that the Defendant, while holding the gun, escorted her to an abandoned house where he raped her. Viewing this evidence in light most favorable to the State, this is sufficient evidence to support the jury's verdict that the Defendant committed aggravated kidnapping. Alexander further testified that once inside the house, the Defendant "threw" her onto the floor, forced her remove her skirt, and penetrated her vaginally with his penis. We conclude that this is sufficient evidence from which the jury could have found the Defendant guilty of rape. Moreover, to lend credence to Alexander's testimony, the State

-10-

presented evidence that Alexander twice identified the Defendant before trial, at a photographic line-up and at a physical line-up, and introduced as an exhibit a composite drawing of Alexander's attacker. In addition, fingerprints found in the house where Alexander testified that the rape occurred were compared with the Defendant's fingerprints, and an expert in fingerprint analysis testified at trial that the prints matched. We conclude that sufficient evidence was presented to support the jury's verdict of guilt as to the crimes perpetrated upon victim Rosheka Alexander.

## V.  TESTIMONY REGARDING VICTIM ALEXANDER'S AGE

The Defendant contends that the trial court erred by allowing the State to present evidence at trial of victim Rosheka Alexander's age. At trial, Alexander testified that she was seventeen years old and that she was a high school student at the time of the crimes. The Defendant argues that this evidence was not relevant to the charges at issue, see Tenn. R. Evid. 402, and that the prejudicial effect of the evidence outweighed its probative value. See Tenn. R. Evid. 403. He states that the evidence was "placed before the jury for the purpose of inflaming the minds of the jury against the Defendant."

However, the Defendant failed to make a contemporaneous objection to the testimony at trial. Failure to make a contemporaneous objection waives consideration by this Court of the issue on appeal. See Tenn. R. App. P. 36(a); State v. Killebrew, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988). Therefore, the issue is waived.

## VI.  ALTERED DOCUMENTS SUBMITTED INTO EVIDENCE

The Defendant argues that the trial court erred by entering into evidence altered documents from the physical line-up conducted on November 10, 1992 and from the photographic line-up at which Rosheka Alexander identified the Defendant as her attacker. The first document about which the Defendant complains is a copy of the photographic line-up. The photo identification number on each photograph in the line-up is covered by a white label affixed to the bottom of the picture. The second document about which the Defendant complains is a copy of the "Line-up Instructions to Witness" from the physical line-up. This form includes a list of the names of participating witnesses following the instructions. Only two victims' names, Rosheka Alexander and Clara Bumphus, are listed on the form; the names of other victims were apparently redacted from the copy before the document was submitted to the jury. The Defendant argues that the redaction "forseeably and reasonably [led] to juror speculation that there were other alleged victims of this [D]efendant." The Defendant also argues that the trial court's error in submitting these documents to the jury was "further enhanced by the judge's spontaneous instruction to the jury, without consulting the Defendant, that the [line up] document had been altered to remove inadmissible evidence, further emphasizing the alterations."

The Defendant's objection to the photographic line-up, on which white labels are affixed to mask photo identification numbers, is somewhat unclear. We find no indication that concealment of the identities of those individuals participating as subjects in the photographic line-up was in any

way prejudicial to the Defendant. Rather, participants' identities were concealed in an effort to protect both the Defendant and other individuals participating in the line-up.

We have also carefully considered the redaction of the physical line-up instruction form. The alterations to the document are hardly visible, if at all. Furthermore, there is no evidence that the jury ascertained from the redaction of the form that victims other than the two in this case participated in the line-up. Again, the form was altered in an effort to protect the Defendant, and we have been presented with no evidence that the redaction prejudiced the Defendant in any way.

Finally, the Defendant contends that the trial court's "spontaneous instruction" to the jury that the documents were altered to remove inadmissible evidence further prejudiced him. However, we are unable to locate any such instruction in the record, and the Defendant makes no citation to the record to support this argument. Because the Defendant has failed to make appropriate references to the record, this issue is waived. See Tenn. Ct. Crim. App. R. 10(b); Killebrew, 760 S.W.2d at 231; Tenn. R. App. P. 27(a)(7), (g).

## VII. HEARSAY

The Defendant argues that the trial court erred by allowing inadmissible hearsay testimony by Erlene Steele, the assistant principle at Rosheka Alexander's high school. At trial, Steele stated that she was approached by one of Alexander's teachers, who was concerned about Alexander's demeanor on the day following the crimes against Alexander in this case. Steele testified that the teacher told her Alexander "indicated . . . that she had been raped." Steele testified that at the teacher's urging, she spoke with Alexander, who "indicated . . . that she had been raped." The defense objected several times to this testimony, and following the testimony, the trial court conducted a hearing outside the presence of the jury to determine the admissibility of the statements. After hearing arguments from counsel for the State and the defense, the trial court determined that the statements were hearsay and therefore inadmissible. The court stated, "I will not allow the gist of the conversation. It is perfectly alright for Ms. Steele to testify as to what she did as a result of the conversation, but she can't testify as to the content of the conversation." The jury then returned to the courtroom, and questioning of the witness continued.

In his brief, the Defendant concedes that no reversible error occurred as the result of Steele's testimony. He states,

> [T]he attempt by the prosecuting attorney to introduce hearsay evidence was subject to timely objection by trial counsel and sustained by the trial court with the remonstration that the basis for the testimony on the grounds of excited utterance was not appropriate due to the passage of time from the incident at issue and the making of the statement; therefore, with the curative statements of the trial court in this instance, no reversible error occurred.

While we agree with the trial court's conclusion that Steele's testimony was inadmissible hearsay evidence and the Defendant's statement that introduction of the testimony was subject to a timely objection by the defense, we are unable to locate any curative instruction by the trial court in the record concerning Steele's testimony. Nevertheless, after considering the entire record in this case, we are satisfied that the trial court's error in admitting the testimony over objection by the defense was harmless in light of other evidence presented at trial. See Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a). Rosheka Alexander herself testified that the Defendant raped her. She identified him as her attacker in a photographic line-up, a physical line-up, and in court. In addition, fingerprints matching those of the Defendant were found at the house where Alexander reported she had been raped. In light of this evidence, we conclude that any error made by the trial court in allowing Steele's testimony was harmless.

## VIII.  JURY INSTRUCTIONS

Counsel for the Defendant on appeal concedes that the jury was properly instructed in this case, and the State agrees. Having carefully reviewed the jury instructions in this case, we conclude that the jury instructions were proper. We find this issue to be without merit.

## IX.  SENTENCING

The Defendant argues that he was improperly sentenced. Specifically, he contends that the trial court erred by imposing consecutive sentences and by failing to consider and apply the mitigating factors[3] submitted by the defense. He contends that the trial court erred by "sentencing the Defendant to a sentence in excess of the sentence agreed to in the 1993 plea agreement which was later set aside." Prior to sentencing in this case, the Defendant filed a "Notice of Mitigating Factors," in which he explained,

> The [D]efendant was originally sentenced to twenty (20) years at 30% as a Range One Standard Offender. This was pursuant to a good faith plea agreement with the [S]tate and accepted by the Court. Due to an interpretation of the Multiple Rapist statute, and through no fault of his, the [D]efendant was required to serve the sentence at 100%. The [S]tate, therefore, breached the agreement, which resulted in the [D]efendant's withdrawal of the plea and the trial herein. Defendant should, therefore, be sentenced to no more than the original agreed sentence (the equivalent of 20 years @ 30%) or, at most, the sentence was later determined by the TDOC to be a legal sentence in this matter (20 years @ 100%).

The Defendant now argues that any sentence in excess of his initial sentence is "penal and retributory" and contends that the trial court should have applied his prior plea agreement as a mitigating factor under the catch-all provision of Tennessee Code Annotated § 40-35-113. See Tenn. Code Ann. § 40-35-113(13).

---

[3] Although the Defendant argues that the trial court failed to apply "mitigating factors" submitted by the defense, the only mitigating factor submitted by the defense that we are able to locate in the record is the Defendant's prior plea agreement, which the Defendant discusses in his "Notice of Mitigating Factors."

When a criminal defendant challenges the length, range, or manner of service of a sentence, the reviewing court must conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the event that the record fails to show such consideration, the review of the sentence is purely de novo. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). Because the trial court in this case failed to make an affirmative showing in the record that it considered all relevant sentencing principles, facts and circumstances, our review of the Defendant's sentence is de novo.

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b), -103(5); State v. Williams, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The presumptive sentence to be imposed by the trial court for a Class B, C, D or E felony is the minimum within the applicable range unless there are enhancement or mitigating factors present. Tenn. Code Ann. § 40-35-210(c). The presumptive sentence for a Class A felony is the midpoint of the sentencing range unless there are enhancement or mitigating factors present. Id. § 40-35-210(c). If there are enhancement or mitigating factors, the court must start at the presumptive sentence, enhance the sentence as appropriate for the enhancement factors, and then reduce the sentence in the range as appropriate for the mitigating factors. Id. § 40-35-210(e). The weight to be given each factor is left to the discretion of the trial judge. Shelton, 854 S.W.2d at 123. However, the sentence must be adequately supported by the record and comply with the purposes and principles of the 1989 Sentencing Reform Act. State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986).

Aggravated kidnapping is a Class B felony. Tenn. Code Ann. § 39-13-304(b)(1). The sentencing range for a Range II offender convicted of a Class B felony is between twelve and twenty years. Id. § 40-35-112(b)(2). For the aggravated kidnapping of Clara Bumphus and the aggravated kidnapping of Rosheka Alexander, the trial court sentenced the Defendant as a Range II offender to fifteen years incarceration for each count. Aggravated robbery is also a Class B felony. Id. § 39-13-402(b). For the aggravated robbery of Clara Bumphus, the trial court sentenced the Defendant as a Range II offender to fifteen years incarceration.

Aggravated rape is a Class A felony. Id. § 39-13-502(b). The sentencing range for a Range I offender convicted of a Class A felony is between fifteen and twenty-five years. Id. § 40-35-112(a)(1). For the aggravated rape of Clara Bumphus, the trial court sentenced the Defendant as a

Range I offender to twenty years incarceration. Rape is a Class B felony. Id. § 39-13-503(b). The sentencing range for a Range I offender convicted of a Class B felony is between eight and twelve years. Id. § 40-35-112(a)(1). For the rape of Rosheka Alexander, the trial court sentenced the Defendant as a Range I offender to fifteen years incarceration.

When imposing a sentence, the trial court must make specific findings of fact on the record supporting the sentence. Tenn. Code Ann. § 40-35-209(c). The record should also include any enhancement or mitigating factors applied by the trial court. Id. § 40-35-210(f). Thus, if the trial court wishes to enhance a sentence, the court must state its reasons on the record. The purpose of recording the court's reasoning is to guarantee the preparation of a proper record for appellate review. State v. Ervin, 939 S.W.2d 581, 584 (Tenn. Crim. App. 1996).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The defendant bears the burden of showing the impropriety of the sentence imposed. Ashby, 823 S.W.2d at 169.

## A. ENHANCEMENT AND MITIGATING FACTORS

In sentencing the Defendant, the trial court found no mitigating factors and applied the following enhancement factors:

> (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
> . . .
> (8) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community;
> (9) The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense;
> . . .
> (13) The felony was committed while on . . . [p]robation . . . .

Tenn. Code Ann. § 40-35-114(1), (8), (9), (13)(C).

Although the Defendant argues that the trial court should have considered his prior plea agreement as a mitigating factor at the sentencing hearing, he cites no authority in support of this argument. We find no merit to this argument and conclude that the trial court did not err by applying no mitigating factors in sentencing the Defendant.

Turning now to the application of enhancement factors in this case, we note that Tennessee Code Annotated § 40-35-114 prohibits application of enhancement factors which are "essential elements of the offense as charged in the indictment." Because the use of a deadly weapon is an

essential element of aggravated rape and aggravated robbery,[4] we conclude that this factor was erroneously applied with regard to those two offenses. However, we conclude that the enhancement factors were otherwise properly applied in this case. The Defendant's presentence report indicates that the Defendant was previously convicted of several other offenses, including second degree burglary, false reports, criminal impersonation, receiving stolen property, and aggravated robbery. In addition, the record indicates that the Defendant committed the offenses in this case while he was on probation for prior convictions. We therefore conclude that the trial court properly applied sufficient enhancement factors to support enhancement of all sentences in this case.

The trial court, however, erred by sentencing the Defendant to fifteen years as a Range I offender for the rape of victim Rosheka Alexander. As previously stated, rape is a Class B felony, id. § 39-13-503(b), and the sentencing range for a Range I offender convicted of a Class B felony is between eight and twelve years. Id. § 40-35-112(a)(1). Nevertheless, the record in this case supports classification of the Defendant as a Range II offender for this offense. A Range II "multiple offender" is defined, in pertinent part, as a defendant who has received "[a] minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, or within the next two (2) lower felony classes . . . ." Id. § 40-35-106(a)(1). Because of the Defendant's prior criminal history, stated above, we conclude that the trial court should have sentenced the Defendant as a Range II offender for the rape of victim Rosheka Alexander. The sentencing range for a Range II offender convicted of a Class B felony is between twelve and twenty years. Id. § 40-35-112(b)(2). We thus conclude that the sentence of fifteen years imposed by the trial court for this offense falls within the proper sentencing range for a Range II offender and is adequately supported by the record.

## B. CONSECUTIVE SENTENCES

Finally, the Defendant argues that the trial court erred by imposing consecutive sentences in this case. The court ordered that the sentence for one count of aggravated kidnapping and the sentence for aggravated robbery run concurrently, but consecutive to all other sentences. The court further ordered that the sentence for the second count of aggravated kidnapping and the sentence for rape run concurrently, but consecutive to all other counts. Thus, the Defendant received an effective sentence of fifty years.

It is within the sound discretion of the trial court whether or not an offender should be sentenced consecutively or concurrently. State v. James, 688 S.W.2d 463, 465 (Tenn. Crim. App. 1984). A court may order multiple sentences to run consecutively if it finds by a preponderance of the evidence that the Defendant fits into one of the categories established in the statute. See Tenn. Code Ann. § 40-35-115(b). This Court has held that an extensive history of criminal activity is enough to support consecutive sentencing. State v. Adams, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997).

---

[4] Although aggravated kidnapping may be accomplished by use of a deadly weapon, see Tenn. Code Ann. § 39-13-304(a)(5), the Defendant in this case was charged only with aggravated kidnapping committed to "facilitate the commission of any felony or flight thereafter . . . ." Id. § 39-13-304(a)(1).

-16-

In sentencing the Defendant, the trial court found that the Defendant "is a professional criminal who has knowingly devoted [his] life to criminal acts as a major source of livelihood," Tenn. Code Ann. § 40-35-115(b)(1), that the Defendant "is an offender whose record of criminal activity is extensive," id. § 40-35-115(b)(2), and that the Defendant "is sentenced for an offense while on probation." Id. § 40-35-115(b)(6). We agree with these findings by the trial court. The presentence report in this case indicates that the Defendant, who was twenty-two at the time he committed the offenses in this case, was convicted of numerous prior offenses, including four felony convictions, beginning at the time he was seventeen years old. In addition, the Defendant reported that he maintained employment only from 1988 until 1989 and from September 1992 until November 1992; no other employment history is included in the presentence report. Finally, the record indicates that the Defendant committed the offenses in this case while on probation for previous convictions. We therefore conclude that the record in this case supports the imposition of consecutive sentences.

Accordingly, we AFFIRM the judgment of the trial court, as modified, to indicate that the Defendant is sentenced as a Range II Multiple Rapist for the rape conviction. This matter is remanded to the trial court for entry of an amended judgment for the rape conviction.

_____
ROBERT W. WEDEMEYER, JUDGE