STATE of Tennessee, Appellee,

v.

James CLINTON, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

May 24, 1988.

Permission to Appeal Denied by Supreme Court July 25, 1988.

Jimmy Reneau, Celina, for appellant.

W.J. Michael Cody, Atty. Gen., Albert L. Partee, III, Asst. Atty. Gen., Nashville, John Moore, Asst. Dist. Atty. Gen., Livingston, for State.

OPINION

WADE, Judge.

The defendant, James Clinton, was convicted of two counts of conspiracy to take a human life under T.C.A. § 39–1–604 and sentenced to five years imprisonment on each count, to be served concurrently. On this appeal, the defendant has in effect alleged four separate errors:

(1) the evidence is insufficient to support convictions of *two* counts of conspiracy;

(2) the plea of his co-conspirator barred the prosecution for the conspiracy crimes he was charged with;

(3) testimony by a state's witness was improperly admitted; and

(4) jury misconduct.

The judgment of the trial court is affirmed.

The indictment alleges a conspiracy between the defendant and Richard Gurley to kill their ex-wives, Connie Clinton and Dianna Gurley.

The police began its investigation when Larry O'Rear, a TBI agent, was approached by Pat Zuller, a friend of Richard Gurley. As a result of their conversation, TBI Agent Morris, posing as a hit man, made contact with Gurley.

In the first of two calls, Gurley informed Morris that the defendant also wanted his wife killed.[1] Morris told Gurley that he would need photographs and license plate numbers of the two women. They agreed to meet at the Silverpoint exit on I–40 where Gurley would pay Morris $1,500, half the amount for the two killings.

Morris recorded the May 10, 1985, meeting. Gurley provided him with $1,500 in cash and the requested photographs.

Richard Gurley entered into a plea bargain and testified for the state.[2] He said that Clinton lived in the same subdivision and worked at the same company as Gurley. After learning that Zuller knew someone who could "take care" of his wife, Gurley spoke with the defendant. Clinton told Gurley that he, too, wanted his wife killed but did not want his name mentioned.

In exchange for Gurley's agreement to take the blame if he got caught, the defendant agreed that he would provide pills to him in jail to commit suicide. Additionally, he agreed to help Gurley out financially. The defendant provided $750 to Gurley along with the requested photographs just prior to the arrest.

Timothy Waldrep, a friend of Gurley, had previously been asked by the defendant if he knew anyone who could perform a "service" for him. Waldrep, who knew defendant was going through a divorce and that his wife was seeing another man, did not take the defendant seriously. Later, he informed the defendant that he could not find anyone. Clinton replied that Gurley had already found someone. Waldrep was also present when Clinton gave Gurley the money and photographs and agreed to help him if he were caught.

Neither Waldrep nor Gurley informed anyone of Clinton's participation until approximately one year after the incident. Waldrep said he came forward at Gurley's request because the defendant had not kept his bargain to help Gurley after his arrest.

Connie Clinton testified on behalf of the defendant. She said they were amicably divorced in 1985. Each was satisfied with the custody arrangement and property division. She stated they lived without incident in the same house during alleged conspiracy.

1. The term "landscaping work" was used in the conversation in reference to contract killings.

2. The plea arrangement had not been submitted to the trial court for approval at the time of the defendant's trial.

Both the defendant and his ex-wife testified that their marital problems came about as a result of working different shifts on the same job. The defendant was aware of his ex-wife's relationship with another man.

The defendant testified that he had provided photographs of his ex-wife to Gurley on the day of the latter's arrest. According to the defendant, Gurley had borrowed the the photographs and promised to repay the $750. The defendant denied the allegations of Gurley and Waldrep and stated that he did not want his wife hurt.

Three character witnesses also testified on behalf of the defendant by attesting to his reputation for truthfulness.

I

■ The defendant first contends that the evidence is insufficient to support the conviction of the defendant upon two separate counts of conspiracy.[3]

The charge of conspiracy to take the lives of Connie Clinton and Dianna Gurley is based upon T.C.A. § 39-1-604:

**Conspiracy to take life or commit felony on a person—Conspiracy to prosecute innocent person.**—(a) If the conspiracy be:

(1) to take a human life; or

(2) to commit a felony on the person of another, the persons so conspiring ... shall be imprisoned in the state penitentiary for not less than five (5) nor more than fifteen (15) years.

The purpose of this statute is to criminalize the act of conspiring to take *a human life* or to commit what would otherwise be a felony. Consequently, because the defendant could be charged with each separate felony he commits, he may also be charged with each offense he *conspires* to commit or each human life he conspires to take. The statutory definition of conspiracy supports this interpretation:

**"Conspiracy" defined.**—The crime of conspiracy may be committed by any two (2) or more persons conspiring:

(1) To commit *any indictable offense.* (emphasis added.)

T.C.A. § 39-1-601.

There is evidence that Gurley and defendant worked together to find a hired killer for two separate and distinct acts; first, to have Dianna Gurley killed, and secondly, to have Connie Clinton killed. The defendant's degree of participation in the plan provided sufficient evidence by which a rational trier of fact could find the defendant guilty beyond a reasonable doubt, of conspiring to kill both women. Rule 13(e), T.R.A.P. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

This issue is without merit.

II

■ The defendant also contends that he could not be convicted of T.C.A. § 39-1-604 because his co-conspirator pleaded guilty to a lesser included offense. He argues that the Gurley plea constituted an acquittal of T.C.A. § 39-1-604 thereby barring the defendant's conviction under the rationale of *Delaney v. State,* 164 Tenn. 432, 51 S.W.2d 485 (1932):

It seems to have been an unbroken rule at common law, ... that, when only two are charged with a conspiracy, and one of them is acquitted, the conviction of the other is void. We have found no dissent from this proposition.

*Id.* at 487.

The record, however, does not reveal any adjudication of Gurley's case, or whether or not he, in fact, entered a plea of guilt to § 39-1-606. Without this evidence in the record, this court cannot properly consider the matter.

If the record did, however, include appropriate documentation of Gurley's conviction, this would not serve to terminate the prosecution of the defendant. This court has previously held that a co-defendant's guilty plea to an unrelated form of conspiracy does not amount to an acquittal. *State*

---

**3.** Although the defendant fails to cite authority on this issue in contravention of Rule 27(a)(7) T.R.A.P. and Rule 10(b) Tenn.R.Crim.P., this court has chosen not to treat the contention as waived.

*v. Morris,* 666 S.W.2d 471 (Tenn.Cr.App. 1983). Likewise, Gurley's plea to the conspiracy statute of T.C.A. § 39–1–606 would not constitute an acquittal and, therefore, would not necessitate dismissal.

This issue is without merit.

### III

■ The defendant also contends that testimony by the state's witness, Timothy Waldrep, was improperly admitted. The testimony in question involved an incident wherein the defendant asked Waldrep if he had "connections" in Detroit who might know of someone who could perform a "hit." The defendant asserts that this was inadmissible evidence of another unrelated crime.

This issue was not raised in the defendant's motion for a new trial. Rule 3(e) T.R.A.P. The nature of the alleged error does not rise to the level necessary to suspend the rule; it is waived.

The issue is without merit.

### IV

The defendant finally alleges two instances of jury misconduct. In the first of these incidents, Dianna Gurley spoke with a juror in the restroom. The juror was overheard to say, "Well it's a shame," to which the victim replied, "Yeah it is." This evidence was presented by stipulated affidavit and nothing further was presented on the nature of the conversation.

The second incident, witnessed by defense counsel and the circuit court clerk, occurred when the court officer reported that "the jury had a question but I answered it." Shortly thereafter, the jury returned with its verdict. Although the court officer was present at the hearing on the motion for a new trial, nothing further was presented on the nature of the jury's question.

Defendant relies on *Gonzales v. State,* 593 S.W.2d 288 (Tenn.1980) for his argument that these two incidents necessitate a new trial. He contends that each incident constituted a "jury separation" and thus, the state had the burden of proving the lack of prejudice caused by the communication.

The principles set forth in *Gonzales,* however, are not controlling in the case *sub judice. Gonzales* involved a sequestered jury which was allowed to separate overnight in order for the jurors to vote in an election. In reviewing and reaffirming the long history of jury separation cases, the court held that upon a showing of the fact of separation of a sequestered jury, the state has the burden of showing that no prejudice occurred during the jury separation. *Id.* at 293. This case did not involve a sequestered jury and, therefore, does not fall within the *Gonzales* guidelines.

■ When the jury is not sequestered, the defendant has the burden of showing something more than mere interactions between the jury and third persons. *State v. Blackwell,* 664 S.W.2d 686, 689 (Tenn. 1984). The defendant must instead establish "that as the result of a juror's contact with a third person some *extraneous prejudicial information, fact or opinion* was imported to one or more jurors or some *outside improper influence* was brought to bear on one or more jurors." (emphasis added.) *Id.*

The proof presented by defendant does not indicate the degree of prejudice necessary to overturn the convictions. The nature of each incident could have been interpreted in any number of ways. The defendant has not met the burden required by *Blackwell.*

This issue is without merit.

The judgment of the trial court is affirmed.

BYERS and REID, JJ., concur.