IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 20, 2001

## STATE OF TENNESSEE v. JERRY FLOYD CALDWELL

**Appeal from the Criminal Court for Putnam County**
**No. 97-0476     Leon Burns, Jr., Judge**

---

**No. M1999-02363-CCA-R3-CD - Filed July 20, 2001**

---

After trial, a Putnam County jury found Defendant guilty of the unlawful possession of a controlled substance, to wit: cocaine over .5 grams, for resale, driving under the influence of an intoxicant, the unlawful possession of drug paraphernalia, and evading arrest. Further, the jury determined Defendant should pay fines of $100,000, $2,500, $2,500, and $1,500 for each respective offense. Subject to a sentencing agreement, the trial court imposed a sentence of nine (9) years on the cocaine offense and 11 months and 29 days for each misdemeanor. The trial court ordered the sentences to be served concurrently and imposed judgment for the fines in accordance with the verdict of the jury. Defendant presents two appellate issues: (1) Whether there is sufficient evidence to convict Defendant of sale of cocaine over 0.5 grams, driving under the influence and possession of drug paraphernalia?; and (2) Whether Defendant's fines are excessive? After a review of the entire record, briefs of the parties and applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

L. TERRY LAFFERTY, SR. J., delivered the opinion of the court, in which DAVID G. HAYES, J., and THOMAS T. WOODALL, J., joined.

John Philip Parsons, Cookeville, Tennessee, for the appellant, Jerry Floyd Caldwell.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; and John A. Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At trial, Robert Kincaid, a police officer with the Monterey Police Department, testified that he was on a routine patrol at approximately 12:30 a.m. on August 3, 1997, when he observed a vehicle approaching him in the city of Monterey, Tennessee. Officer Kincaid turned to follow the vehicle which was proceeding about 20 miles an hour in a 30 miles per hour zone. After observing the white Thunderbird cross the double line three times, Officer Kincaid elected to stop the vehicle. Officer Kincaid engaged his blue lights and the vehicle continued to pass a closed Amoco station

onto the westbound ramp of I-40. Suddenly, "I heard the vehicle punch it, so I punched it right behind him." After obtaining speeds of 90 to 100 miles an hour, Officer Kincaid observed Defendant throw an object from his vehicle which struck Officer Kincaid's windshield at mile marker 299. Officer Kincaid observed a small pickup in front of the Thunderbird and the pickup began weaving from lane to lane in an attempt to slow down the Thunderbird. Officer Kincaid later learned that the driver of the pickup was an off-duty Monterey police officer, Sergeant Rick Lynch. Between the two vehicles, the Thunderbird was forced to slow down and stop in the emergency lane of I-40.

As Officer Kincaid approached the vehicle with weapon drawn, Defendant got out of the car very unsteady on his feet. Defendant became belligerent and started cussing. As Officer Kincaid handcuffed Defendant, he smelled a strong odor of alcohol on Defendant's breath. Defendant's speech was slurred and his eyes were red and watery. Defendant denied throwing anything from his vehicle and stated that he thought Officer Kincaid was "Rick" and that they were going to beat him. Defendant stated he had been playing golf that day and Officer Kincaid found an ice chest in his vehicle with some unopened beer. Officer Kincaid did not have Defendant perform a field sobriety test because he considered Defendant to be a flight risk. Officer Kincaid was of the opinion that Defendant was intoxicated and transported him the to the Putnam County jail. After obtaining warrants and completing his report, Officer Kincaid returned to the area where he saw Defendant throw something from his car.

From the Monterey on-ramp, Officer Kincaid proceeded westbound in the emergency lane of I-40. Between mile marker 298 and 299, Officer Kincaid saw a blue plastic bag on the side of the emergency lane. Officer Kincaid activated a private recorder so that a record could be made of what he found. Officer Kincaid approached the blue bag and saw another bag, a ziplock bag, laying about two to six inches from the blue bag. Officer Kincaid opened the Wal-Mart blue bag which contained a checkbook bearing the name of Jerry F. Caldwell, Defendant. In the ziplock bag, Officer Kincaid could see a green rectangular box, a box of sandwich baggies, some black tape rolled up, and one small baggie containing some white powder. Inside the rolled up black electrical tape was eight small bags of white powder found to be cocaine. Inside the green box was a scale and some white powder residue substance. Officer Kincaid secured the bags and its contents. On August 5, 1997, two days later, Officer Kincaid delivered the bags of white powder to the crime lab of the Tennessee Bureau of Investigation in Nashville. During cross-examination, Officer Kincaid stated that, in the past, interdiction stops had been made on I-40 in the general vicinity for drug investigations.

On August 5, 1997, Glenn Everett, a forensic scientist with the Tennessee Bureau of Investigations, testified that he received some evidence, suspected white powder substance, for chemical analysis. After weighing the white powder substance, which was 30.1 grams, Agent Everett performed a chemical test on the substance and determined it to be cocaine, a Schedule II controlled substance. Agent Everett could not say how pure the cocaine might have been, as he did not conduct such an analysis.

On his own behalf, Defendant, age 50, testified that he had been playing golf that afternoon and his plans were to go to Cookeville, Tennessee, to spend the night and play golf the next day. Defendant stated that he got off the interstate to go home when he saw a patrol car on the on-ramp of I-40 at Monterey. The patrol car hit its brake lights and Defendant thought is was Richard Lynch, another police officer, with whom he was having great difficulty. This patrol car began following Defendant with its bright lights and Defendant became convinced it was Lynch. Defendant returned to the interstate heading westbound. As he got to the 300 mile marker, Defendant saw a truck ahead on the right that was pulling back onto the interstate. Believing it was a civil defense worker, Defendant pulled over believing there was some help. When Defendant pulled over, the truck in front was stopped and Officer Kincaid pulled in behind Defendant. Defendant testified at that point, that Rick Lynch got out of his truck and came running to him with both hands on his gun, screaming and hollering, "Jerry, I'm tired of you telling people that I planted drugs on you." Here, Defendant stated in a prior occasion that at a roadblock, Lynch took some marijuana from him and stated that, "the next time he caught me out he was going to take care of me."

Defendant stated that he ran because he thought Rick Lynch was the officer chasing him. At the stop, Defendant disputed that Officer Kincaid had drawn his weapon, only Lynch had his weapon drawn. Defendant was then handcuffed and Lynch searched him, taking his money which came up short at the jail. Defendant stated that Officer Kincaid did not take his money, and he apologized for the high speed chase and putting his life in danger. When Defendant was pulled over, he stated that his checkbook was on the console of his car and that he had no reason to throw it out. At the Putnam County jail, Officer Kincaid showed Defendant a blue bag and his checkbook. Defendant denied any knowledge of the blue bag and Officer Kincaid stated, "Well, in this bag is nine bags of cocaine" and he said, "In the bottom of this bag is your checkbook." Defendant responded, "It's impossible." During cross-examination, Defendant, without ever seeing or knowing Officer Kincaid before that night, believed that a conspiracy was formed against him by Rick Lynch to accuse him of drug involvement.

LEGAL ANALYSIS

SUFFICIENCY OF EVIDENCE

Defendant asserts that the evidence in this record is insufficient to support his convictions for possession of drug paraphernalia, driving under the influence of an intoxicant and possession of cocaine over .5 grams for resale. The State maintains that the evidence was legally sufficient to support all three convictions in this case.

Rule 13(e), Tennessee Rules of Appellate Procedure, provides that "findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." When evaluating the sufficiency of evidence, we must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (citation omitted); *State v. Keogh,* 18 S.W.3d 175, 180-

81 (Tenn. 2000); *State v. Patterson,* 966 S.W.2d 435, 444, (Tenn. Crim. App. 1997). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. *State v. Brewer,* 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Although the evidence of the defendant's guilt is circumstantial in nature, circumstantial evidence alone may be sufficient to support a conviction. *State v. Patterson,* 966 S.W.2d at 444; *State v. Gregory,* 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993).

Great weight is given to the result reached by the jury in a criminal trial. A jury verdict accredits the State's witnesses and resolves all conflicts in favor of the State. *State v. Patterson,* 966 S.W.2d at 444; *State v. Bigbee,* 885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *Id.; State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn. 1978). Moreover a guilty verdict removes the presumption of innocence which the defendant enjoyed at trial and raises a presumption of guilt on appeal. *State v. Buggs,* 995 S.W.2d 102, 105-6 (Tenn. 1999).

A criminal offense may be established exclusively by circumstantial evidence. *State v. Transou,* 928 S.W.2d 949, 955 (Tenn. Crim. App. 1996); *State v. Hailey,* 658 S.W.2d 547, 552 (Tenn. Crim. App. 1983), *perm. app. denied,* (Tenn. 1983). However, before a defendant may be convicted of a criminal offense based exclusively upon circumstantial evidence, the evidence "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant. . . ." *State v. Transou,* 928 S.W.2d at 955, citing *State v. Crawford,* 225 Tenn. 478, 482, 470 S.W.2d 610, 612 (1971).

## A. POSSESSION OF COCAINE FOR RESALE

Defendant contends that the unusual circumstances concerning the discovery of the drugs in a high traffic area and the convenience of finding Defendant's checkbook next to the drugs in a separate bag, stretch the credulity of the conviction.

The indictment in Count 4 alleges that on August 3, 1997, in Putnam County, Tennessee, Defendant did unlawfully possess with intent to resale a controlled substance, to wit: cocaine greater than .5 grams, as a Schedule II controlled substance in violation of Tennessee Code Annotated § 39-17-417.

In support of this accusation, Officer Kincaid testified that Defendant threw an object from his car which struck the officer's patrol car. After the booking process, Officer Kincaid returned to the general area, mile marker 299-298, and found a Wal-Mart blue bag containing Defendant's checkbook. Adjacent to this bag, within two to six inches, nine bags of cocaine and paraphernalia of drug use were found in a ziplock bag. The suspected white powder substance was found to be cocaine, a Schedule II controlled substance that weighed 30.1 grams. To contradict this evidence, Defendant testified that his checkbook was last on the console of his car, and he flatly denied that the cocaine or other items were his. Defendant attributes the State's proof to an alleged conspiracy

between law enforcement officer, Rick Lynch, and other members of the Monterey Police Department.

The amount of cocaine and the manner in which it is packaged can support an inference of intent to sell or for resale, as opposed to personal use. *State v. Brown,* 915 S.W.2d 3, 8 (Tenn. Crim. App. 1995). Furthermore, the possession of a controlled substance may be actual or constructive. Constructive possession of a drug means the person had the power and intention at a given time to exercise dominion and or control over the controlled substance directly or through others. *State v. Cooper,* 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). The jury had the benefit of Officer Kincaid's testimony and that of Defendant. The jury determined that the State's proof was more believable. We find the evidence as found by the jury to support the conviction of Defendant for the possession of cocaine with intent for resale. There is no merit to this issue.

## B. DRIVING UNDER THE INFLUENCE

In this issue, Defendant contends that the State's proof of three factors, such as Defendant's erratic driving, Defendant's belligerent attitude and he had alcohol on his breath, does not support Defendant's conviction for driving under the influence of an intoxicant.

Count 1 of the indictment charges that Defendant did unlawfully, on August 3, 1997, drive and operate a motor vehicle upon the public roads in Putnam County at a time when he was under the influence of an intoxicant.

For the benefit of the jury, Officer Kincaid described how he first met Defendant and observed his erratic driving. Defendant was driving 20 miles per hour in a 30 miles per hour zone, he crossed a double line at least three times, Defendant passed an appropriate place to stop his vehicle, and then engaged in a high speed chase to evade an arrest or stop. Officer Kincaid smelled the odor of alcohol on Defendant's breath, his eyes were bloody and his speech was slurred. In Defendant's vehicle, Office Kincaid found an ice chest with three unopened beers. Defendant admitted drinking some beer earlier that afternoon, but not preceding the stop. The jury, in hearing this testimony, found Defendant guilty, beyond a reasonable doubt, of driving under the influence of an intoxicant. We find the evidence sufficient to support Defendant's conviction for driving under the influence of an intoxicant.

## C. POSSESSION OF DRUG PARAPHERNALIA

Defendant asserts that the only evidence concerning drug paraphernalia was testimony concerning a set of scales. The scales were shown to the jury without an explanation of their use or relationship to drugs. Thus, there is no scintilla of evidence to support a conviction for drug paraphernalia.

Count 5 of the indictment alleged that on August 3, 1997, Defendant did unlawfully and intentionally possess drug paraphernalia with the intent to use, plant, propagate, cultivate, grow,

harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance, to wit: scales and baggies in violation of Tennessee Code Annotated § 39-17-415 [sic] (425).

Tennessee Code Annotated § 39-17-425(a)(1). Unlawful drug paraphernalia uses and activities, encompasses the definition of drug paraphernalia, as found in Tenn. Code Ann. § 39-17-402(12) and declares this offense to be a Class A misdemeanor. In Tennessee Code Annotated § 39-17-424, this statute determines whether or not an item is considered drug paraphernalia and provides "the court or other authority making such a determination shall in addition to all other logically relevant factors consider the following:

(1) Statements by the owner or anyone in control of the object concerning its use;

(2) Prior convictions, if any, of the owner or of anyone in control of the object for violation of any state or federal law relating to controlled substances;

(3) The existence of any residue of controlled substances on the object;

(4) Instructions, oral or written, provided with the object concerning its use;

(5) Descriptive materials accompanying the object which explain or depict its use;

(6) The manner in which the object is displayed for sale;

(7) The existence and scope of legitimate uses for the object in the community; and

(8) Expert testimony concerning its use.

We respectfully must disagree with Defendant that only a set of scales were shown to the jury. In the presence of the jury, Officer Kincaid testified that he found in the ziplock bag, a green rectangular box containing some scales and the residue of white powder substance, baggies, ties, a cut straw, and nine baggies of cocaine. Based upon finding these items, Officer Kincaid elected to charge Defendant with drug paraphernalia. Although Officer Kincaid did not detail in his testimony the connection between the scales, baggies, ties, cut straw and cocaine, the State urged the jury to reasonably consider that the scales were in a box that contained white powder residue which was similar to the white powder substance subsequently determined to be cocaine. We find there is sufficient evidence in the record for the jury to reasonably determine that such items were used to facilitate the sale or resale of cocaine.

We find there is sufficient evidence in this record that supports a trier of facts findings that Defendant is guilty of the offenses charged in the indictment.

-6-

FINES

Defendant asserts that this Court should review the fines imposed by the jury in this case, since the jury had no input given them to consider any mitigating factors in determining a proper fine. Defendant is indigent and was a laborer prior to his incarceration. The State counters that Defendant failed to raise this issue in his motion for a new trial, thus, he has waived this issue on appeal.

The record reflects that upon the jury reporting its verdicts, it assessed fines of $100,000 for the charge of possession of cocaine for resale, $2,500 for drug paraphernalia, $2,500 for evading arrest, and $1,500 for driving under the influence of an intoxicant. The jury responded affirmatively when polled by the trial court as to the determination of the fines. The trial court accepted the jury's fixing of the fines as imposed within the range given to the jury as an option and would be the judgment of the court.

We agree with the State that Defendant failed to present this issue of excessive fines in his motion for a new trial and, thus, the trial court did not consider the question of excessive fines. Tennessee Rules of Appellate Procedures 3(e), provides that the failure to specifically state an issue in a motion for a new trial results in a waiver of this issue on appeal. *See State v. Clinton,* 754 S.W.2d 100, 103 (Tenn. Crim. App. 1988); *State v. Benson,* No. 01C01-9806-CC-00239, 2000 WL 19535, at *8 (Tenn. Crim. App. 2000), *perm. app. denied,* (Tenn. 2000). Therefore, this issue has been waived.

In conclusion, we affirm the trial court's judgment.

_____
L. TERRY LAFFERTY, SENIOR JUDGE