IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 11, 2006

**STATE OF TENNESSEE v. DANIEL POTIN**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 04-03223    Chris Craft, Judge**

_____

**No. W2005-01100-CCA-R3-CD  - Filed June 7, 2006**

_____

The appellant, Daniel Potin, was found guilty by a jury in the Shelby County Criminal Court of possession of .5 grams or more of cocaine with the intent to sell.  The trial court sentenced the appellant to nine years in the Tennessee Department of Correction and imposed a fine of $20,000. On appeal, the appellant challenges the sufficiency of the evidence, the trial court's designation of a witness as an expert, and the fine imposed.  Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

Robert Wilson Jones and Tony N. Brayton (on appeal), and Jennifer Johnson and Tim Albers (at trial), Memphis, Tennessee, for the appellant, Daniel Potin.

Paul G. Summers, Attorney General and Reporter; Brian Clay Johnson, Assistant Attorney General; William L. Gibbons, District Attorney General, and Greg Gilbert, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

At trial, Officer Robert L. Strickland with the Memphis Police Department testified that on the evening of February 24, 2004, he was assigned to patrol the Cooper/Young area of the West Precinct.  At approximately 6:30 p.m., he saw a blue 1995 Mazda Protege pulling away at a high rate of speed going east on Young near the intersection with McLean.  Officer Strickland followed the vehicle and investigated its license plate.  Officer Strickland discovered that the license plate on the Protege was registered to another vehicle.  Accordingly, at the Barksdale and Young intersection, which was on the south side of a school, Officer Strickland activated his blue lights to stop the

vehicle. While going through the intersection of Tanglewood and Young, Officer Strickland noticed the driver throw an object that appeared to be a piece of paper out of the passenger window.

The Protege stopped approximately fifty to one hundred feet past the intersection. Officer Strickland approached the driver's side window. As he approached, he noticed the driver "acting kind of suspicious," reaching around the two front seats as if to get something or put something away. When he reached the driver, Officer Strickland explained the reason for the stop, and he asked the driver for his identification. Officer Strickland learned that the driver was the appellant. Officer Strickland noticed that the passenger side window of the vehicle was rolled down. Officer Strickland testified that the night was chilly, and he opined that most people would not be driving with a window rolled down. Officer Strickland believed the window had been rolled down when the object had been thrown from the vehicle. He observed that the area was illuminated with street lights so that it was not extremely dark.

After noticing the window, Officer Strickland asked the appellant to exit the car, and the appellant complied. Officer Strickland noted that although the appellant was Hispanic, he appeared to understand English well. Officer Strickland put the appellant in the back of the squad car then walked to the intersection to locate the item that had been thrown from the car. In the area where he had seen the object land, which area was near the middle of the intersection but on the right side of the road, Officer Strickland discovered a white and violet herbal tea bag wrapper which was crumpled into a ball. Officer Strickland took the wrapper back to his squad car before unfolding it. Inside, Officer Strickland discovered two clear plastic bags. One bag contained two "rocks" of a substance that appeared to be crack cocaine. The other bag held a single rock which appeared to be crack cocaine. All three rocks were of a substantial size.

Officer Strickland called for assistance, and Officer Kcbena Cash arrived at the scene. Officer Strickland relinquished custody of the crack cocaine to Officer Cash. Together, they completed the necessary paperwork. Officer Strickland arrested the appellant for felony drug possession. Officer Strickland and Officer Cash searched the appellant and his vehicle but discovered no drugs, weapons, money, or paraphernalia for smoking crack cocaine.

Officer Strickland stated that his knowledge of crack cocaine came from "four years of [police] experience and talking to some of the drug users." He explained that typically a drug user would use a piece of crack cocaine that was small enough to fit in the end of a pen. He further explained that normally addicts carried only one or two small pieces at a time for their personal use. Officer Strickland maintained, "They get [crack cocaine] when they want it. They don't store it up." Officer Strickland indicated that the pieces he found at the scene were the size of a quarter or a half dollar. He opined that approximately forty pieces of crack cocaine for personal use could be obtained from the three rocks found on the scene.

Officer Strickland stated that six months to one year prior to this incident, he had pulled over the appellant for a traffic violation. He explained that

I approached the vehicle and asked him for his driver's license. I think he gave me his driver's license, and then he started saying something about his belly. He had to go to surgery, blah, blah, blah. Then he lifted up his shirt. I looked down and I said, you know, that's good enough for me. I let him go. I didn't give him nothing, no warning. I just said, here, here's your license. Have a nice night. That was it.

When Officer Strickland stopped the appellant on February 24, 2004, he realized it was the same person he had stopped previously when the appellant again "lifted up his shirt and said something about his stomach. He had to go to surgery." Officer Strickland said that he was not going to let the appellant go a second time with that excuse.

Officer Kcbena Cash with the Memphis Police Department testified that on the night of February 24, 2004, he responded to Officer Strickland's call for assistance. He went to the intersection of Tanglewood and Young where the appellant was in Officer Strickland's custody. Officer Cash took possession of two or three pieces of a yellowish rock substance that Officer Strickland had discovered. Officer Cash took the substance to the property room of the police department. The substance tested positive for crack cocaine.

Officer Cash stated that he had been a member of the Memphis Police Department for seven years. Prior to February 24, 2004, he had seen crack cocaine "[c]ountless" times. He had training at the police academy and in highway drug interdiction wherein he learned how crack cocaine was made, "how to recognize it, the effects of crack cocaine, where someone is using it actually on crack cocaine, things of that nature." Through the course of his police work, Officer Cash had seen crack cocaine labs, people selling crack cocaine, and people using crack cocaine. Officer Cash stated, "I have had several, several [people], to explain to me their experiences, through the sells, even drug dealers as well." However, he acknowledged that he had no academic training regarding the street use of crack cocaine. Over objection, the trial court allowed Officer Cash to be designated an expert in the use of cocaine.

Officer Cash testified that crack cocaine is smoked through a glass or metal pipe, similar in shape to the body of a pen. A single dose of crack cocaine would have to be small enough to fit into the head of a pen. The crack cocaine is lit, then it liquefies. Officer Cash stated that one rock will last for some time. Officer Cash explained that crack cocaine is a thick, hard rock after it is first made. Pieces are broken off of the large rock for use. He opined that the rocks of crack cocaine discovered at the scene were far too large to be used as they were, but they could be broken into thirty-five or forty pieces for individual use.

Officer Cash said that addicts typically carry crack pipes with them; however, no such device was found in the appellant's car or on his person. Officer Cash did not recall finding any other drug paraphernalia on the appellant or in his car, but he did recall finding a large amount of jewelry. He stated that sometimes drug dealers carried money or scales or drove nice cars but that was not always

the case. He maintained that he had never encountered a drug dealer who carried paraphernalia for using crack cocaine. Officer Cash noted that at the time of his arrest, the appellant did not appear to be under the influence of crack cocaine.

Tara Barker, a Special Agent Forensic Scientist with the Tennessee Bureau of Investigation (TBI), testified that the substance discovered at the scene was brought to the TBI crime laboratory for testing. She determined that the three rocks consisted of 5.9 grams of cocaine base.

The appellant testified on his own behalf.[1] He stated that he was a thirty-six-year old political refugee from Cuba. On the evening of February 24, 2004, he rolled down his windows to listen for traffic as he backed out of a friend's driveway. He did not roll his windows back up because it was a "nice day. It wasn't cold." After he went through an intersection, he saw police lights behind him. He pulled over, thinking that he had been stopped because he had the wrong license plates on the vehicle. Officer Strickland approached the appellant. The appellant showed him papers from the glove compartment to explain that he had the wrong plates on the car because the car had not passed inspection. The appellant denied throwing anything from his car windows.

On cross-examination, the appellant stated that he was wearing a pullover and a zip-up sweater when he was stopped. He said that his windows were only one quarter of the way down. The appellant testified that he showed Officer Strickland his stomach to demonstrate that he was not working at that time because he had just undergone an operation. He acknowledged that Officer Strickland had let him go the first time he showed his stomach, and he hoped that the officer would let him go again. The appellant noted that the stop occurred in a residential area with a school two or three blocks away.

At the conclusion of the proof, the jury found the appellant guilty on count one of possession of .5 grams or more of cocaine with the intent to sell and on count two of possession of .5 grams or more of cocaine with the intent to deliver. The jury assessed fines of $20,000 for each conviction. The trial court merged the conviction for count two into the conviction for count one. The trial court approved the jury's suggested fine of $20,000. Additionally, the trial court imposed a nine year sentence. On appeal, the appellant challenges the sufficiency of the evidence supporting his conviction, the designation of Officer Cash as an expert, and the excessiveness of the fine. We will address these issues in a different order than that in which they were raised.

## II.  Analysis

### A.  Expert Witness

The appellant contends that the trial court erred in allowing Officer Cash "to testify as an expert regarding how crack cocaine is consumed and manufactured." The appellant also maintains

---

[1] The appellant testified through an interpreter.

that the testimony was not relevant to any issue at trial, and it did not assist the jury in understanding the facts at issue at trial.

Generally, the trial court has broad discretion in determining the qualifications, admissibility, relevancy, and competency of expert testimony. See State v. Stevens, 78 S.W.3d 817, 832 (Tenn. 2002). As such, this court will not overturn the trial court's ruling on the admissibility of expert testimony absent an abuse of that discretion. See State v. Ballard, 855 S.W.2d 557, 562 (Tenn. 1993). Moreover, expert testimony must be both relevant and reliable before it may be admitted. McDaniel v. CSX Transp., Inc., 955 S.W.2d 257, 265 (Tenn.1997).

Tennessee Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

This court has previously found testimony similar to that given by Officer Cash to be admissible under Rule 702. See State v. Carey, 914 S.W.2d 93, 96 (Tenn. Crim. App. 1995); State v. Samuel L. Giddens, No. M2002-00163-CCA-R3-CD, 2004 WL 2636715, at *2 (Tenn. Crim. App. at Nashville, Nov. 15, 2004); State v. Timothy Murrell, No. W2001-02279-CCA-R3-CD, 2003 WL 21644591, at *6 (Tenn. Crim. App. at Jackson, July 2, 2003).

Specifically, we note that in Giddens, the defendant challenged the testimony of drug task force agent Tim Haun regarding certain indicators suggesting when a drug is possessed for sale or for personal use. Giddens, No. M2002-00163-CCA-R3-CD, 2004 WL 2636715, at *1. Agent Haun testified that he learned these indicators as a result of his training and his experience in the field. Id. at *2. This court found that because Agent Haun's testimony was based on both his training and his experience, he properly testified as an expert witness under Rule 702. Id. Moreover, this court noted that Agent Haun's testimony was also admissible under Rule 701, which rule permits opinion testimony by lay witnesses.[2] Id.

---

[2] Tennessee Rule of Evidence 701 provides:

> If a witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are
>
> (1) rationally based on the perception of the witness and
>
> (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

In the instant case, like in Giddens, Officer Cash testified that he had training concerning drug interdiction, and he had police experience dealing with drug users and dealers. Accordingly, he was properly qualified as an expert. Moreover, one of the issues in the case was whether the appellant possessed the cocaine for personal use or for sale or delivery. As such, Officer Cash's testimony about the amounts carried by addicts, the dosage amount, and the need for a pipe with which to smoke the cocaine were all relevant to material issues at trial. See State v. William Ray Collier, No. M2001-00893-CCA-R3-CD, 2002 WL 170731, at **4-5 (Tenn. Crim. App. at Nashville, Feb. 4, 2002). Therefore, the trial court did not abuse its discretion in allowing Officer Cash to testify regarding the use and manufacture of cocaine.

### B. Sufficiency of the Evidence

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

The appellant was convicted of possessing .5 grams or more of cocaine with the intent to sell and possessing .5 grams or more of cocaine with the intent to deliver. In order to sustain the appellant's convictions, the State was required to prove that the appellant knowingly possessed a controlled substance, i.e. cocaine, with the intent to sell or deliver. See Tenn. Code Ann. § 39-17-417(a)(4) (2003). Possession of contraband, such as drugs, can be either actual or constructive. See State v. Transou, 928 S.W.2d 949, 955 (Tenn. Crim. App. 1996). As this court explained in State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987) (citations omitted):

> Before a person can be found to constructively possess a drug, it must appear that the person has "the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others." In other words, "constructive possession is the ability to reduce an object to actual possession." The mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person possessed the drugs. Likewise, mere association with a person who does in fact control the

drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs.

In the instant case, Officer Strickland saw the appellant throw an object from his car window before he pulled over for the traffic stop. Officer Strickland noticed that the appellant was behaving suspiciously by moving around quite a bit in the car while the officer approached. The appellant tried to get Officer Strickland to let him go, claiming he needed stomach surgery, a ploy he had previously used with some success. Officer Strickland secured the appellant in the squad car and investigated the thrown object. In the area where he saw the object land, he found a crumpled tea bag wrapper containing three large rocks of crack cocaine which weighed a total of 5.9 grams. Both Officer Strickland and Officer Cash testified that the amount found was much larger than that needed for a single usage. They explained that addicts did not typically carry large amounts of crack cocaine. The amount carried by the appellant was almost forty times that usually possessed by users of crack cocaine. Moreover, the officers testified that the appellant did not possess any paraphernalia for smoking the crack cocaine, and they noted that users generally travel with such devices. Tennessee Code Annotated section 39-17-419 (2003) provides that "[i]t may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." We conclude that the foregoing proof was sufficient to sustain the appellant's convictions for possessing .5 grams or more of cocaine with the intent to sell or distribute.

## C. Fine

As his final issue, the appellant argues that the fine imposed by the trial court was excessive. However, the appellant failed to present the issue of excessive fines in his motion for new trial and the trial court did not address this issue in the motion for new trial hearing. Tennessee Rule of Appellate Procedure 3(e) provides that failure to specifically state an issue in a motion for new trial results in waiver of the issue on appeal. See State v. Clinton, 754 S.W.2d 100, 103 (Tenn. Crim App. 1988). Therefore, this issue has been waived. State v. John Robert Benson, No. 01C01-9806-CC-00239, 2000 WL 19535, at *8 (Tenn. Crim. App. at Nashville, Jan. 13, 2000). Regardless, we will briefly address the merits of this issue.

We note that the maximum fine which could have been imposed in this case is $100,000. Tenn. Code Ann. § 39-17-417(c)(1) (2003). A defendant's ability to pay is a factor in imposing a fine; however, it is not a controlling factor. State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993). We will review this issue de novo without a presumption of correctness because the trial court did not set forth findings of fact regarding the appellant's ability to pay. State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996).

On appeal, the appellant summarily claims that because he is a political refugee and has been found indigent, the $20,000 fine imposed is excessive. A declaration of indigency, standing alone, does not immunize a defendant from a fine. Alvarado, 961 S.W.2d at 153. The appellant bears the

burden of establishing on appeal why the fines are excessive.  <u>Id.</u>  The appellant has failed to meet this burden.  We note that the trial court found that the punitive nature of the fine was appropriate in light of the fact that the appellant possessed 5.9 grams of crack cocaine near a school.  We will defer to the findings of the trial court.  <u>Id.</u>

## III.  Conclusion

Based upon the foregoing, we affirm the judgment of the trial court.


_____
NORMA McGEE OGLE, JUDGE