# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned On Briefs November 20, 2013

## STATE OF TENNESSEE v. TEDDY R. ROBBINS, JR.

**Appeal from the Criminal Court for Scott County**
**No. 9239   E. Shayne Sexton, Judge**

---

**No. E2013-00527-CCA-R3-CD - Filed February 10, 2014**

---

Appellant, Teddy Russell Robbins, Jr., was indicted by the Scott County Grand Jury for domestic assault, aggravated assault, especially aggravated kidnapping, and aggravated rape based on acts committed against his wife. After a jury trial, Appellant was convicted of all the offenses as charged in the indictment. As a result, he was sentenced to an effective sentence of fifty years in incarceration. After the denial of a motion for new trial, Appellant filed a timely notice of appeal. On appeal, Appellant argues: (1) the evidence was insufficient to sustain the convictions for especially aggravated kidnapping and rape; and (2) the trial court erred by refusing to grant a mistrial. After our review, we determine that the evidence was sufficient to support the convictions, and the trial court did not abuse its discretion in denying a mistrial where the juror in question was dismissed from the jury pool and the trial court issued a curative instruction. Accordingly, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT. JR., and D. KELLY THOMAS, JR., JJ., joined.

Clarence E. Pridemore, Jr., Knoxville, Tennessee, for the appellant, Teddy R. Robbins, Jr..

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; William P. Phillips, District Attorney General; and Thomas E. Bartlay, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual Background*

In the early morning hours of February 22, 2009, A.R.,[1] the victim, used a hidden cell phone to call the police from her home on Howard Jeffers Lane in Scott County, Tennessee. The victim and Appellant were married and lived at the home with their two children. When police arrived at the scene, they found the victim. She was bleeding, her hair was falling out, and she had bruises on her torso and on her ribcage. The victim refused medical attention and informed the officers that responded to the scene that Appellant "made [her] do things [she] didn't want to do."

The victim initially denied that a sexual assault had occured. However, two days after the ordeal, she informed Officer Roger Douglas of the Scott County Sheriff's Department that she had been raped.

As a result of the statements made by the victim, Appellant was indicted by the Scott County Grand Jury with domestic assault, aggravated assault, especially aggravated kidnapping, and aggravated rape.

At trial, A.R. testified that she awoke on the morning of February 21, 2009, because Appellant was cursing at her. Appellant beat her by kicking her and throwing her down to the floor. The victim received knots on her head and bruises on her body.

At one point, Appellant tried to take the victim and the children from the trailer. The victim tried to escape by running away, but Appellant chased her down and caught her. He forced her back into the trailer where he continued to beat her.

Around 2:00 p.m., Appellant left the trailer. He informed the victim that if she tried to leave while he was gone he would kill her parents. The victim was afraid to leave.

A few hours later, Appellant returned with "some people." The victim was unable to identify the people who accompanied Appellant. Appellant argued with the victim. After a time, he left the trailer, taking the people with him. When Appellant returned the second time, he was "really mad." Appellant claimed he saw a police officer outside, and he continued to beat the victim.

---

[1] It is the policy of this Court to identify victims of sexual crimes by their initials.

At some point, Appellant cut the victim with his knife, "poked" her with his knife, and scraped the knife across her neck. The victim described the knife as a black pocket knife inscribed with the word "Gerber." When Appellant was using the knife to scare and cut the victim he told her that he was going to kill her. The victim testified that Appellant used the knife "off and on" during the ordeal. Appellant was drinking the entire time.

Appellant followed the victim everywhere to prevent her escape, even following her to the bathroom. One time in the bathroom, Appellant ordered the victim to take off her clothes. When she refused to comply with his demands, Appellant ripped her clothes off and informed her that they were going to have anal sex. Appellant told the victim he was "gonna fuck [her] in the ass whether [she] liked it or not." First, Appellant forced the victim to perform oral sex. The victim's teeth scraped Appellant's penis, and he hit her. Appellant applied baby oil to his penis and the victim's behind before penetrating her anally. The victim begged him to stop and tried to get away. Appellant moved the victim to the couch and continued to penetrate her anally while holding a knife to her throat.

The victim estimated that this portion of the ordeal lasted from about 7:00 p.m. on February 21, 2009, to around 4:00 a.m. on February 22, 2009. Around 4:00 a.m., Appellant fell asleep. The victim was able to use a hidden cell phone to call the police.

During the trial, the assistant district attorney informed the trial court that the district attorney was approached by a juror. The woman exchanged a greeting with the district attorney and gave him a hug. The event took place outside court while the jury was on break but prior to the conclusion of the case for the day. The trial court conducted a hearing on the matter. At the hearing, the bailiff, Michael Wilson, testified. He stated:

> When I took the jury to the jury room from the courtroom, as we exited the courtroom, the lady - she looks like she's in her seventies - she hollered at Judge [ ], said, "That's one of my favorite persons." And, which, you know, Judge [ ] was so far away, he just - he may have waved or something. I don't think he even heard her. As we neared the jury room, General [ ] came in. She said, "There's another of my favorite people." And General [ ] didn't hear what she said. And like I say, she just kind of walked past me and before I could stop her, General [ ] backed up next to the wall and she spoke to him, said, "Hi, [General]" and kind of hugged his neck and she turned and walked in the jury room.

Officer Wilson thought that it was a short exchange and did not occur within earshot of the majority of the jury. The assistant district attorney stated that the district attorney had no direct knowledge of the State's case other than who was assigned to the case from his office.

The trial court identified the juror in question. The juror testified that she did not exchange any information with the district attorney other than a casual hello and made no mention of the case. The juror was unable to recall if she relayed any of this information to other jurors.

At the conclusion of the hearing, the trial court excused the juror and polled the remaining jury members about their knowledge of or interaction with the event. None of the remaining jurors discussed the conversation with the dismissed juror. The trial court instructed the remaining members of the jury that they were to have no contact with anyone involved in the case. The trial court renewed this admonishment at the conclusion of the proof and instructed the jury to make its determination based solely on the evidence presented in court and the law as instructed.

Counsel for Appellant moved for a mistrial. The trial court denied the motion.

At the conclusion of the proof, Appellant was convicted of the offenses as charged in the indictment. Appellant was sentenced to twenty-five years for especially aggravated kidnapping and twenty-five years for aggravated rape, to be served consecutively. As to the remaining charges, Appellant was sentenced to five years for aggravated assault and eleven months and twenty-nine days for domestic assault. The sentences for aggravated assault and domestic assault were ordered to be served concurrently with the remaining sentences, for a total effective sentence of fifty years.

After the denial of a motion for new trial, Appellant filed this appeal.

*Analysis*
*Sufficiency of the Evidence*

Initially, Appellant insists that the evidence is insufficient to support his convictions for especially aggravated kidnapping and aggravated rape. Specifically, he argues that the State failed to produce a weapon that was used during the kidnapping or rape and that there was minimal evidence other than the testimony of the victim to show that the rape or kidnapping actually occurred. The State disagrees.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994) (citing *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992)). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639

S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Aggravated rape "is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim accompanied by . . . [f]orce or coercion . . . and the defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon . . . [or][t]he defendant causes bodily injury to the victim[.]" T.C.A. § 39-13-502. Sexual penetration is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening of the victim's, the defendant's, or any other person's body, but emission of semen is not required[.]" *Id.* § 39-13-501(7). Coercion "means a threat, however communicated, to[ ] . . . commit any offense[,]" and force "means compulsion by the use of physical power or violence." *Id.* § 39-11-106(a)(3)(A), (a)(12). Bodily injury "includes a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty[.]" *Id.* § 39-11-106(a)(2). Especially aggravated kidnapping, as applicable to the case herein, is defined as the knowing and unlawful removal or confinement of another "so as to interfere substantially with the other's liberty" and accomplished with a deadly weapon. T.C.A. §§ 39-13-302, -305.

In the case herein, the testimony at trial from the victim was that Appellant confined her to their home for several hours against her will by the use of a knife and by threatening the lives of her parents. The victim was able to describe the knife to the jury and recounted exactly how Appellant used the knife while he raped and beat her. The officers who responded to the scene saw "poke" marks around the victim's neckline, and the victim told

the officers that Appellant threatened her with a knife. Although no knife was recovered from the scene, Officer Sandra Tucker recalled recovering a knife from Appellant. Additionally, the officers suspected that some type of sexual assault had occurred, although the victim did not report the rape until a few days after the ordeal. We note that physical evidence is not a prerequisite to a conviction. *See, e.g., State v. Joseph William Wilson*, No. W2001-03007-CCA-R3-CD, 2003 WL 261939, at *6 (Tenn. Crim. App., at Jackson, Feb. 3, 2003), *perm. app. denied* (Tenn. May 27, 2003); *State v. Antonio Kendrick*, No.02-C-01-9604-CR00121, 1997 WL 686266, at *2 (Tenn. Crim. App., at Jackson, Nov. 5, 1997), *perm. app. denied* (Tenn. July 13, 1998). As previously stated, we will not disturb the jury's implicit credibility findings. *Pruett*, 788 S.W.2d at 561. The proof is sufficient for the jury to conclude that Appellant was "armed with a weapon or . . . article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon." *See* T.C.A. § 39-13-502(a)(1). Appellant also argues that no weapon was found. This contention, however, goes to the victim's credibility, which, as discussed above, we will not second guess. We also note that there is no requirement in the statute that a defendant still be in possession of the weapon used to commit the crime when he is apprehended or that the weapon be recovered. The proof as accredited by the jury's verdict, showed that Appellant accomplished the act while armed with a knife used to intimidate the victim. Appellant is not entitled to relief with respect to this issue.

*Mistrial*

Next, Appellant complains that the trial court erred by refusing to grant a mistrial when one of the members of the jury had contact with the district attorney during a recess in trial. Appellant argues that "it was never determined what [the juror] may or may not have said or what comments she may or may not have made to the other jurors" despite the denial by each individual member of the jury of having any conversation with the juror about her interaction with the district attorney. In Appellant's brief, he recounts the events that took place, then makes the following argument on this issue: "Therefore, [Appellant] contends that he was not tried before a fair and impartial jury." He cites the United States and Tennessee Constitutions to support his argument. The State insists that Appellant has failed to show error or prejudice and does not demonstrate that a manifest necessity exists for a mistrial.

The purpose of a mistrial is to correct the damage done to the judicial process when some event has occurred which would preclude an impartial verdict. *See Arnold v. State*, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977). The decision whether to grant a mistrial is within the trial court's discretion and will not be disturbed absent an abuse of that discretion. *State v. Millbrooks*, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991) (citing *State v. Hall*, 667 S.W.2d 507, 510 (Tenn. Crim. App. 1983)). For this reason, an appellate court's review

should provide considerable deference to the trial court's ruling in determining whether an occurrence or event at trial has so prejudiced the defendant or the State as to preclude a fair and impartial verdict. *See State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996).

In determining whether there is a "manifest necessity" for a mistrial, "'no abstract formula should be mechanically applied and all circumstances should be taken into account.'" *State v. Mounce*, 859 S.W.2d 319, 322 (Tenn. 1993) (quoting *Jones v. State*, 403 S.W.2d 750, 753 (Tenn. 1966)). Only when there is "no feasible alternative to halting the proceedings" can a manifest necessity be shown. *State v. Knight*, 616 S.W.2d 593, 596 (Tenn. 1981).

Recently, in *State v. William Darelle Smith*, No. M2010-01384-SC-R11-CD, ___ S.W.3d ___, 2013 WL 4804845, at *5 (Tenn. Sept. 10, 2013), our supreme court discussed the proper steps for a trial court to take when extra-judicial communication occurs between a juror and a third-party. The court stated:

> When a trial court learns that an extra-judicial communication between a juror and a third-party has occurred, the court must take steps to assure that the juror has not been exposed to extraneous information or has not been improperly influenced. In most circumstances, the appropriate first step is to conduct a hearing in open court in the presence of the defendant to place the facts in the record and to determine on the record whether cause exists to find that the juror should be disqualified. *Whitmore v. Ball*, 77 Tenn. 35, 37 (1882); *Smith v. State*, 566 S.W.2d 553, 559-60 (Tenn. Crim. App. 1978). [ ] As the Court of Appeals has noted, when misconduct involving a juror is brought to a trial court's attention, "it [is] well within [the judge's] power and authority to launch a full scale investigation by summoning . . . all the affiants and other members of the jury, if need be, with a view of getting to the bottom of the matter, and this, if necessary, upon [the judge's] own motion." *Shew v. Bailey*, 260 S.W.2d at 368.

> Because of the potentially prejudicial effect of a juror's receipt of extraneous information, the State bears the burden in criminal cases either to explain the conduct of the juror or the third party or to demonstrate how the conduct was harmless. Error is harmless when "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *State v. Brown*, 311 S.W.3d 422, 434 (Tenn. 2010) (quoting *Neder v. United States*, 527 U.S. 1, 15, 119 S.Ct. 1827, 144 L. Ed. 2d 35 (1999)).

When a jury is not sequestered, something more than a showing of an extra-judicial communication between a juror and a third party is required to shift the burden to the State. There must also be evidence that, as a result of the extra-judicial communication, some extraneous prejudicial fact or opinion "was imported to one or more jurors or some outside improper influence was brought to bear on one or more jurors." *State v. Blackwell*, 664 S.W.2d at 689; *see also State v. Meade*, 942 S.W.2d 561, 565 (Tenn. Crim. App. 1996) (quoting *State v. Clinton*, 754 S.W.2d 100, 103 (Tenn. Crim. App. 1988)). Thus, when it is shown that a juror has been exposed to extraneous prejudicial information or an improper influence, a rebuttable presumption arises and the burden shifts to the State to explain the conduct or demonstrate that it was harmless. *State v. Adams*, 405 S.W.3d [641, 651 (Tenn. 2013)]; *Walsh v. State*, 166 S.W.3d 641, 647 (Tenn. 2005).

*Smith*, ___ S.W.3d at ___, 2013 WL 4804845, at *5.

In the case herein, the trial court inquired whether extra-judicial communication occurred between the district attorney and the juror. The juror testified during a hearing to the trial court that she gave the district attorney a hug because he was her "cousin." The juror denied sharing this experience with any of the other jurors on the panel. The trial court went on to poll each individual member of the jury separately in order to ascertain whether the juror in question had discussed her interaction with the district attorney. All of the jurors denied knowledge of the event. The trial court dismissed the offending juror and admonished the remaining jurors about their task to determine the proof based on the facts presented during trial and the law as charged by the court. The trial court did not find the communication to be prejudicial. In fact, the trial court found the communication harmless. We agree. Appellant has not shown prejudice or bias in the remaining jury and is, therefore, not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JERRY L. SMITH, JUDGE