IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 18, 2007

**STATE OF TENNESSEE v. KENNETH J. CRADIC**

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S48,157     R. Jerry Beck, Judge**

_____

**No. E2006-01975-CCA-R3-CD     Filed July 31, 2008**

_____

The defendant, Kenneth J. Cradic, was convicted of three counts of rape of a child (Class A felony), and three counts of incest (Class C felony). He was sentenced to twenty years for each Class A felony and four years for each Class C felony. The trial court ordered that two of the Class A felony convictions be served consecutive to each other but concurrent to the third conviction and that the three Class C felony convictions be served consecutive to each other and concurrent to the Class A felonies, for a total effective sentence of forty years. On appeal, the defendant argues that the evidence was insufficient to support his convictions, that the sentence is improper, and that the trial court improperly denied his motion to sever his offenses and to suppress his statement. After careful review, we conclude that no error exists and affirm the judgments from the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

Stephen M. Wallace, District Public Defender, and Terry L. Jordan, Assistant District Public Defender, for the appellant, Kenneth J. Cradic.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and James F. Goodwin, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant, Kenneth J. Cradic, was implicated by his daughter, the victim, as the perpetrator of multiple sexual offenses. The defendant was interviewed by two members of law enforcement, a detective with the Kingsport Police Department and a lieutenant with the Sullivan County Sheriff's Department, and acknowledged sexual contact with the victim. At the conclusion of both interviews, the police officers reduced the defendant's statements to writing and, each time, he signed the statements.

During the hearing on the motion to suppress his statements, the defendant testified that he voluntarily went to speak with the officers. He said that both of the police officers treated him in a professional manner and that he understood that he was not under arrest and was free to go at any time. The defendant said that he did not admit to any of the acts of which he was accused. He said he signed the statements without reading them and that they were only read to him in part. The defendant testified that he asked the lieutenant if it would be better if he had a lawyer and that he was told he did not need one after he signed the advice of rights form.

During the State's rebuttal proof, the lieutenant testified that the defendant never asked him about a lawyer. He testified that he would have stopped his interview with the defendant and taken him home if he had requested an attorney.

The trial court found that the defendant was not under arrest either time the two statements were given. On both occasions, he went to the interviews voluntarily and was fully informed that he was not under arrest. During the second interview, the defendant was given his Miranda waiver of advice and agreed to waive his rights. The trial court accredited the lieutenant's testimony that the defendant did not mention or ask for a lawyer and denied the defendant's motion to suppress his statements.

At trial, the law enforcement officers again testified that they began their investigation after the victim made statements implicating her father, the defendant, as a perpetrator of sexual assault against her. One of the events occurred at a motel in the Kingsport city limits and the other events occurred at the defendant's home. The defendant provided a statement to the Kingsport Police detective in which he claimed he "only had sex with her once" and that he was "just trying to show her love." He further told the detective that he had sex with his daughter twice at his home, once in the bathroom and once in the bedroom. The statement was reduced to writing, and the defendant signed it.

The lieutenant with the Sullivan County Sheriff's Office testified at trial that he became aware of the investigation regarding the defendant and the victim after a phone call from the Kingsport Police. He interviewed the defendant and prepared a written statement based on the defendant's oral statement to him that included an admission that he had engaged in intercourse with the victim. The defendant told him that there was only one incident of sexual contact and that it occurred after the victim allegedly asked him to show her what sex felt like.

The victim testified that the defendant was her father and that she was fifteen years old at the time of trial. She said that the defendant would touch her "kittycat" and "boobies" with his fingers, mouth, and his "lizard." She testified that he touched her at his home and at a motel. She said that, during each incident, the defendant removed the victim's clothes and that he put himself inside her until "white stuff came out from his lizard." She described in detail the circumstances surrounding each assault and testified that she told the defendant that it hurt, but he did not stop. She also testified that he told her not to tell anyone what was happening and that she should keep it a secret. The victim said she could not keep it a secret because "it hurt so bad."

During cross-examination, the victim testified that she recalled telling her stepmother, the defendant's wife, that she said the defendant did these things to her because she was afraid of the actual perpetrator. She also acknowledged that she told two other people that the defendant was not the person who touched her.

During redirect examination, the victim testified that her mother's boyfriend also touched her but that he did so after the defendant had touched her. She said that her stepmother told the victim that she would buy her gifts if she would tell the authorities that the defendant did not do anything.

The victim's stepmother testified that the defendant usually signs paperwork without reading it. The victim's cousin testified that the victim told him that her stepfather, not the defendant, "did it."

The defendant also testified that he does not read documents and that he did not admit to the offenses he was accused of by the victim. He said he merely repeated what the detective told him. He also denied admitting to the lieutenant that he had done anything to the victim. He testified that the lieutenant told him what he was being accused of and that he repeated the accusations back to the officer. The defendant said he signed and initialed the statement based on the notes the lieutenant made during their interview. The defendant denied having inappropriate sexual contact with his daughter.

Analysis

First, the defendant argues that the evidence was insufficient to support his convictions. Specifically, he argues that the victim's testimony was not reliable or credible. When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Brewer*, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. *Id.* In *State v. Grace*, the Tennessee Supreme Court stated that "[a] guilty verdict by the jury,

approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

At trial, the victim testified that the defendant inserted his penis into her vagina on three separate occasions. Medical testimony showed that the twelve-year-old victim's hymen was no longer intact and also showed a tear that had healed. The medical proof presented was consistent with a penis being inserted into the vagina of a young girl. The defendant also provided statements to two police officers that he had penetrated the victim on three different occasions.

Based on the proof presented at trial, the jury could have reasonably concluded that the defendant vaginally raped the victim. Though the defendant argues that the victim's testimony was not reliable because she acknowledged telling two people that the defendant did not rape her, she also testified that the defendant's wife tried to get her to change her story. Any conflicts in the victim's testimony have been resolved in favor of the State. The defendant is not entitled to relief on this issue.

Next, the defendant argues that the trial court abused its discretion in consolidating all of the offenses for one trial. In reviewing a trial court's decision regarding severance of offenses, we look to the evidence presented at the motion hearing, along with the trial court's findings of fact and conclusions of law. *Spicer v. State*, 12 S.W.3d 438, 445 (Tenn. 2000). We review the trial court's decision under an abuse of discretion standard. *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999). This court will not interfere with the exercise of this discretion unless it appears on the face of the record that the accused was prejudiced by the court's ruling. *State v. Wiseman*, 643 S.W.2d 354, 362 (Tenn. Crim. App. 1982).

In most instances, the trial court's discretion in severing offenses is greatly limited by Rules 8 and 14 of the Tennessee Rules of Criminal Procedure. *See Shirley*, 6 S.W.3d at 246. Rule 8(a) mandates multiple offenses be joined if they are based on the same conduct or arise from the same criminal episode unless they are severed pursuant to Rule 14. Rule 8(b) allows multiple offenses to be joined if part of a common scheme or plan or if they are of the same or similar character. The trial court, before trial, must grant a severance of offenses mandatorily joined under Rule 8(a), where it is necessary for a fair determination of the defendant's guilt or innocence of each offense. Tenn. R. Crim. P. 14(b)(2)(I). Rule 14 grants the accused the right to a severance of offenses permissibly joined under Rule 8(b) unless: (1) the offenses are part of a common scheme or plan; and (2) the evidence of one would be admissible upon the trial of the others. Tenn. R. Crim. P. 14(b)(1); *Spicer*, 12 S.W.3d at 443.

Where offenses are "part of a common scheme or plan and the evidence of one would be admissible upon the trial of the others," the trial court is allowed wide discretion in determining whether to sever offenses. *Shirley*, 6 S.W.3d at 247. A decision whether to sever offenses under Rule 14(b)(1) will turn on the facts of each case; therefore, a trial court's decision regarding severance will be reversed only where the "court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *Id.* (citations omitted).

In determining whether a severance is mandated, the primary inquiry is whether the evidence of one crime would be admissible in the trial of the other offense if the two charges were tried separately. *Id.; Spicer*, 12 S.W.3d at 445. The courts should look to Tennessee Rule of Evidence 404(b) for guidance in determining whether the evidence of the other offense is admissible. *See Shirley*, 6 S.W.3d at 247-48. Rule 404(b) excludes evidence of a defendant's "other crimes, wrongs, or acts" if offered only to show the defendant's propensity to commit such "crimes, wrongs, or acts"; however, if the evidence is otherwise relevant to a material issue, Rule 404 does not prohibit its admission. *State v. Moore*, 6 S.W.3d 235, 239 (Tenn. 1999). Not only must the evidence be relevant, but the probative value of the evidence must not be outweighed by its prejudicial effect. *Spicer*, 12 S.W.3d at 445.

The court must also determine if the offenses qualify as a common scheme or plan. Tenn. R. Crim. P. 14(b)(1); *Moore*, 6 S.W.3d at 240. There are three categories of common scheme or plan evidence: (1) distinctive design or signature crimes; (2) a larger continuing plan or conspiracy; and (3) same criminal transaction. *Moore*, S.W.3d at 240*; Shirley*, 6 S.W.3d at 248.

For a distinctive design to exist among multiple offenses, the modus operandi of the offenses "must be substantially identical and must be so unique that proof the defendant committed the other offenses fairly tends to establish that he also committed" the charged offense. *Moore*, 6 S.W.3d at 240 (citations omitted). Mere similarity between offenses or the fact that a defendant has committed a series of crimes is insufficient to prove the offenses are part of a common scheme or plan. *Id.* at 241.

The defendant argues that the offenses he committed against the victim in December of 2002 were wholly unrelated to the offenses that he committed against the victim in February 2003. The State contends that the offenses in this case involved the same type of criminal conduct and that the defendant had presented no evidence to the contrary. We agree. The defendant raped the victim, his daughter, on three different occasions. All of the crimes involved the same criminal conduct against the same victim. The defendant has not shown that severance was necessary for a fair determination of his guilt or innocence and, thus, has failed to show that the trial court abused its discretion.

Next, the defendant argues that the two statements were taken involuntarily. He alleges that he does not read or write well and that the detective told him the police had DNA results in his case, that he did not need a lawyer, and that he failed a voice stress test.

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence and resolve any conflicts in the evidence. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). However, this court is not bound by the trial court's conclusions of law. *State v. Randolph*, 74 S.W.3d 330, 333 (Tenn. 2002). The application of the law to the facts found by the trial court are questions of law that this court reviews de novo. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000). The defendant has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court. *Braziel v. State*, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

The trial court's determination at the suppression hearing, that a confession was voluntary, is presumptively correct on appeal. *State v. Stephenson*, 878 S.W.2d 530, 544 (Tenn. 1994). This determination is binding unless the evidence in the record preponderates against that finding. *State v. Carter*, 988 S.W.2d 145, 149 (Tenn. 1999).

The fact that one suffers from certain mental deficiencies does not necessarily prevent that person from understanding and waiving constitutional rights. *See generally, State v. Middlebrooks*, 840 S.W.2d 317, 327 (Tenn. 1992); *IV Wharton's Criminal Evidence* § 643, p. 169 (14th ed. 1987). A person with a mental deficiency may waive his *Miranda* rights if that waiver was knowingly and voluntarily made. *State v. Green*, 613 S.W.2d 229, 233 (Tenn. Crim. App. 1980); *Braziel v. State*, 529 S.W.2d 501, 505-06 (Tenn. Crim. App. 1975). When determining whether an accused has voluntarily, knowingly and intelligently waived his Miranda rights, this court must consider the totality of the circumstances which existed when the accused waived these rights. *Middlebrooks*, 840 S.W.2d at 326; *State v. Benton*, 759 S.W.2d 427, 431 (Tenn. Crim. App. 1988). The totality of the circumstances must reveal an uncoerced choice and the required level of comprehension. *State v. Blackstock,* 19 S.W.3d 200, 208 (Tenn. 2000) (quoting *State v. Stephenson*, 878 S.W.2d 530, 545 (Tenn. 1994)). Where a defendant contends that his waiver of *Miranda* rights was not voluntarily or understandingly made, the court must consider such factors as the defendant's age, level of functioning, prior criminal justice experience, demeanor, responsiveness to questioning, possible malingering, and the manner in which the *Miranda* rights were explained. *Blackstock*, 19 S.W.3d at 208. However, no single factor is necessarily determinative. *Id.*

Our supreme court set forth the test in Tennessee for determining whether an individual is "in custody" as contemplated by *Miranda. See State v. Anderson*, 937 S.W.2d 851 (Tenn. 1996). We must determine whether, "under the totality of the circumstances, a reasonable person in the suspect's position would consider himself or herself deprived of freedom of movement to a degree associated with formal arrest." *Id.* at 855. Factors relevant to that determination include:

> the time and location of the interrogation; the duration and character of the
> questioning; the officer's tone of voice and general demeanor; the suspect's method
> of transportation to the place of questioning; the number of police officers present;

any limitation on movement or other form of restraint imposed on the suspect during the interrogation; any interactions between the officer and the suspect, including the words spoken by the officer to the suspect, and the suspect's verbal or nonverbal responses; the extent to which the suspect is confronted with the law enforcement officer's suspicions of guilt or evidence of guilt; and finally, the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will.

Id.

Before a custodial interrogation can occur, law enforcement must inform the person that: (a) he or she has the right to remain silent; (b) any statement made may be used as evidence against the person; (c) the person has the right to the presence of an attorney; and (d) if the person cannot afford an attorney, one will be appointed prior to questioning, if the person so desires. *Miranda*, 384 U.S. at 444. Unless these warnings are given, a subsequent statement by the individual is generally inadmissible as evidence. *Stansbury v. California*, 511 U.S. 318, 322, 114 S. Ct. 1526, 128 L. Ed. 2d 293 (1994).

The accused must be adequately apprized of the right to remain silent and the consequences of deciding to abandon that right for the accused to effect a valid waiver. *State v. Stephenson*, 878 S.W.2d 530, 544 (Tenn. 1994). The State bears the burden of proving a voluntary and knowing waiver by a preponderance of the evidence. *State v. Bush*, 942 S.W.2d 489, 500 (Tenn. 1997). The court must consider the totality of the circumstances when determining whether the State has met its burden of proof. *Id*. Waiver may be inferred in certain circumstances, and a written waiver is not required. See State v. Elrod, 721 S.W.2d 820, 823 (Tenn. Crim. App. 1986).

During the hearing on the defendant's motion to suppress, the trial court specifically found that the defendant voluntarily agreed to go to the police station on both occasions. Both officers testified that the defendant was not under arrest during the interviews and was free to leave at any time. The defendant was allowed to go home at the conclusion of both interviews. The trial court found that both statements were freely and voluntarily given. Though the defendant contends that he asked for counsel, the trial court accredited the lieutenant's testimony that the defendant did not ask for counsel. The defendant has provided no proof that preponderates against the findings of the trial court and is not entitled to relief on this issue.

In his final issue, the defendant argues that the trial court erred in imposing a consecutive sentence and further erred in ordering him to pay fines and court costs. A defendant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). When a defendant appeals the length, range, or manner of service of his or her sentence, it is this court's duty to conduct a de novo review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered

the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999).

To determine whether the defendant has carried this burden, this court considers: (a) the evidence adduced at trial and the sentence hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel as to sentencing alternatives; (e) the nature and characteristics of the offense; (f) the enhancement and mitigating factors; and (g) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103(5), -210(b).

A court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

> (1) [t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
> (2) [t]he defendant is an offender whose record of criminal activity is extensive;
> (3) [t]he defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
> (4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
> (5) [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
> (6) [t]he defendant is sentenced for an offense committed while on probation; or
> (7) [t]he defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b); *see also State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). Furthermore, in the event the trial court finds that the defendant is a "dangerous offender," it must also determine whether the consecutive sentences (1) are reasonably related to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing. *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995).

Here, the trial court imposed a consecutive sentence because the court found the defendant was convicted of two or more statutory offenses involving sexual abuse of a minor with consideration of the following aggravating circumstances under Tennessee Code Annotated section

40-35-115(b)(5), including (1) the relationship between the defendant and the victim; (2) the time span of the defendant's undetected sexual activity; (3) the nature and scope of the sexual acts; and (4) the extent of the residual, physical, and mental damage to the victim. The record reflects that the trial court's determination to order consecutive sentencing is supported by the record and is in full accordance with Tennessee's sentencing guidelines.

The defendant, who claims he is indigent, also argues that he was fined excessively by the jury. The State argues that the defendant failed to present this issue in his motion for new trial and that this issue should be waived on appeal. Tennessee Rule of Appellate Procedure 3(e) provides that failure to specifically state an issue in a motion for new trial results in waiver of that issue on appeal. *See State v. Clinton*, 754 S.W.2d 100, 103 (Tenn. Crim. App. 1988). In *State v. Bryant*, 805 S.W.2d 762, 766 (Tenn. 1991), the supreme court held that fines are reviewable pursuant to Tennessee Code Annotated section 40-35-401.

In determining the total sentence, a trial court considers, among other factors, the defendant's ability to pay a fine. *Id.*; *see also State v. Patterson*, 966 S.W.2d 435, 462-63 (Tenn. Crim. App. 1997). The defendant's ability to pay the fine is not necessarily a controlling factor, and a sizeable fine may be used for punitive effect in the same manner that incarceration may be punitive. *Patterson* at 463; *see also State v. Marshall*, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993). In fact, a significant fine is not automatically precluded just because it works a substantial hardship on a defendant. *Marshall*, 870 S.W.2d at 542. The trial court's imposition of a fine, if any, is to be based upon the factors and principles of the 1989 Sentencing Act relevant to an appropriate total sentence, such as prior history, potential for rehabilitation, financial means, and mitigating and enhancement factors. *State v. Blevins*, 968 S.W.2d 888, 895 (Tenn. Crim. App. 1997) (citing *Bryant*, 805 S.W.2d at 766).

The record before us is sufficient to justify affirming the amount of the fine imposed by the trial court. The record shows that the defendant is a poor candidate for rehabilitation and that he has an extensive criminal record. As cited previously, this court has previously held that a fine is not prohibited merely because it may cause a financial hardship upon a defendant. *See Marshall* at 542. Therefore, we affirm the fine imposed by the trial court.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgments from the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE